# Wytheville.

## Fitzgerald and Others v. Frankel and Others.

June 10, 1909.

1. Fraud—*Evidence from the Transaction Itself—Case in Judgment.*— While it is true that fraud is not to be assumed on doubtful evidence or circumstances of mere suspicion, but must be alleged and clearly proved, yet a transaction may of itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of defendants, or even the evidence of witnesses. The circumstances attending and following a transaction are often of such character as to leave no room to doubt the real object and motive of the parties engaged in it. The facts established in the case in judgment justify the conclusion that the appellants have been defrauded of their property by preparation for the wrong, concealment of the truth, and false statements as to material facts by the other party to the transaction.

2. Fraudulent Representation—*Reliance on—Evidence of Non-Reliance.*—If the purchaser of property has not equal means of information with the seller, and he has the right to rely upon representations made by the seller with reference to the property, evidence to show that he did not rely upon such representations must be of the clearest and most satisfactory character. In such cases there ought to be no room for inference or mere implication.

3. Contracts—*Obtained by Fraud—Affirmation—Proof Required— Waiver.*—Affirmation of a contract voidable for fraud must be a solemn and deliberate act. When the original transaction is infected with fraud the confirmation of it is so inconsistent with justice, and so likely to be accompanied with imposition, that the courts watch it with the utmost strictness, and do not allow it to stand but on the clearest evidence. No man can be bound by a waiver of his rights unless such waiver is distinctly made with full knowledge of the rights which he intends to waive, and the fact that he knows his rights and intends to waive them must plainly appear.

Appeal from a decree of the Circuit Court of Pittsylvania county. Decree for defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*Samuel A. Anderson* and *Phlegar & Powell,* for the appellants.

*Peatross & Harris, Wm. Leigh* and *Hill Carter,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill exhibited in this case by the appellants, W. R. Fitzgerald and his wife, Sallie J. Fitzgerald, sets out that they were joint owners of certain valuable real and personal property in the county of Pittsylvania, and that they had been induced by fraud and misrepresentation to convey the same to one Maurice Franklin in exchange for certain real estate in the city of Chicago. The prayer of the bill is that the contract entered into between the parties and the deed carrying out the contract, dated November 20, 1905, be set aside, vacated and rescinded; and that their property be restored to them, and the defendant required to refund the sums paid to him by them under the terms of the contract.

The relief asked for by the appellants rets upon two grounds: 1st. Fraud and misrepresentation in the procurement of the exchange of properties; and, 2nd. The mental incapacity of the appellant, W. R. Fitzgerald, to contract.

In the view that we take of the case, it is only necessary to consider the first of these grounds.

It is true, as contended on behalf of the appellees, that fraud

is not to be assumed on doubtful evidence or circumstances of mere suspicion, but must be alleged and clearly proven. It is, however, equally well established, that "a transaction may of itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of defendants, or even the evidence of witnesses. The circumstances attending and following a transaction are often of such character as to leave not even a shadow of a doubt as to the real object and motive of the parties engaged in it. * * * Experience attests that in a majority of cases fraud can only be established by circumstances. The motives and intentions of the parties can only be judged of by their actions, and the nature and character of the transaction in which they are engaged. They often furnish more conclusive evidence than the most direct testimony." *Hazlewood* v. *Forrer,* 94 Va. 703, 706-7, 27 S. E. 507.

In the present case, the record shows that the appellants owned in Pittsylvania county a very valuable farm, known as their "Home Place," containing about six hundred acres; another less valuable tract, containing about one hundred and fifty acres; five pieces of improved property in the town of Chatham, used as storehouses and offices; a considerable quantity of personal property consisting of farming implements, stock, crops, etc., and a solvent investment of $5,000 secured by mortgage. The appellant, W. R. Fitzgerald, was advancing in life and growing feeble in health, and for this reason he desired to sell his "Home Place" with a view to investing the proceeds in a way to secure him an income without the care and labor incident to farm life. With this in view he began a correspondence with one C. M. Williams, a Chicago real estate broker. Williams came to Virginia, and, finding that the appellants owned considerable property other than the "Home Place," he suggested an exchange, through another agent, for the "Willard Apartments" in Chicago, a twenty-one flat building, valued at $100,000, with a mortgage upon it for $50,000.

He had with him a picture and printed description of the property, and expressed the belief that he might be able to exchange the equity of redemption in this property for all of the property the appellants owned, except a small portion of the personalty. He offered to ascertain if the agent in Chicago would entertain a deal, and if so, to wire the appellant, W. R. Fitzgerald, to meet him in Charlottesville and go to Chicago. The so-called Chicago agent was willing to negotiate. Williams, however, did not meet Fitzgerald at Charlottesville, as agreed upon, but went to Chicago a day in advance and met him at the station there; showed him the property, and introduced him to one H. W. Duncanson as the agent for the owner of the property, and introduced the person who was personating Maurice Franklin as "Mandel Frankel."

Agent Duncanson, after taking a list of the properties owned by the appellants, told Fitzgerald that he would talk it over with "his people" and let him know. He said that the property was being held at $100,000, but he thought he could get the deal through. At two o'clock he told Fitzgerald that he had not yet been able to see "my people," and to return at five o'clock when things might be in shape to talk definitely. When Fitzgerald returned at five o'clock, he found Duncanson with a contract already prepared consummating the exchange of properties, which was signed by Fitzgerald without comment. By the terms of this contract Fitzgerald was to transfer to Maurice Franklin all of his real estate in Virginia, and practically all of his personal property, including the $5,000 mortgage, and the so-called agent of Franklin was to have six days in which to examine the Fitzgerald property and affirm or cancel the contract.

Within the prescribed time, H. W. Duncanson, with one J. B. Smiley, came to Virginia. After examining the property, they expressed dissatisfaction with the Chicago contract; prepared another contract, which included all of the personal property owned by the appellants, some of which was not em-

braced in the Chicago contract, and further provided that the appellants should in addition give their note for $1,500. This contract was signed by J. B. Smiley and the appellants, W. R. Fitzgerald signing his wife's name. On this occasion the Chicago property was again represented to be worth $100,000; to have cost $75,000, and to be rented for $9,000. The appellants were also given, at the time, pictures and descriptions of the property which stated that the property was renting for about $9,000. Duncanson and Smiley also represented themselves as agents for Maurice Franklin, the owner of the property, describing him as a wealthy man in bad health who was at that time in California. Shortly after this agreement was made, deeds of exchange were executed by Maurice Franklin and the appellants. After this suit was brought in April, 1906, and a *"lis pendens"* had been docketed, a deed was executed by Maurice Franklin conveying the Virginia property to J. B. Smiley.

It is fortunately rare that a record presents such a scheme of fraud and deceit as appears to have characterized these transactions from their inception to their conclusion. It is established that there was no such person as Maurice Franklin, who was represented by Duncanson as the wealthy owner of the Chicago property. This so-called Maurice Franklin turns out to have been Mandel Frankel, a young clerk in Duncanson's office, who is shown to have been a tool of Duncanson, ready and willing to sign any paper by any name that his employer might dictate. He files an answer in this cause, admitting his relations with Duncanson, disclosing Duncanson as the real owner of the Chicago property, admitting much of the fraud and deceit that had characterized Duncanson's conduct in the matter, and expressing the belief that unless the transaction was annulled and set aside the appellants would lose their entire property.

J. B. Smiley appears as another tool of Duncanson, actively uniting with him in suppressing the real facts and making a

false impression. He files a petition in the cause and an answer to the amended bill, asserting himself to be the owner in fee simple of the Pittsylvania property. In the further progress of the case he admits that Duncanson was the real owner, and asks for an order, which was entered, striking out of his answer so much thereof as sets up an equitable claim in himself to the land in controversy.

H. W. Duncanson, the real owner of the Chicago property, is shown to be concealing his property from his creditors, using for this purpose a fictitious person or a false name, declaring his existence as a real person, describing him as a wealthy man in bad health and a traveler, representing himself as the agent of this myth, and denying any interest in the property or claiming it all, as he thinks the exigency of the occasion requires.

The Chicago property was purchased by Duncanson in January, 1905, when unimproved, and the conveyance made to his clerk under the false name of Maurice Franklin. Instead of costing, with the improvements put upon it, $75,000, as represented to appellants, it is shown to have cost about $38,000. Instead of renting for $9,000 *per annum,* as represented to appellants, it is shown to have been renting for little more than enough to pay the expenses including the interest on the $50,000 mortgage upon it. It is shown that the written lease contracts taken by Duncanson from the tenants occupying the building called for a much larger rental than was actually paid, and that this was done to enhance the sale value of the building and to keep up the rental value with other would-be tenants. Duncanson claims that this was a custom in Chicago. It is avowedly a fraudulent purpose, intended to entrap the first unwary victim, and behind such a custom, if it exists, one cannot shield himself in a court of conscience.

About the time this suit was brought, or soon thereafter, a suit was filed in Cook county, Illinois, for the purpose of foreclosing the mortgages on the Chicago property involved in this

litigation. The weight of the evidence shows that, instead of the property being worth $100,000, as represented to appellants, it is hardly worth more than enough to pay the mortgages resting upon it.

It is insisted that these representations as to the fee simple and rental value of the Chicago property were only expressions of opinion, and sellers' commendation. This is not tenable. The evidence as a whole leaves no room to doubt that the representations as to value were intended to mislead.

In *Grim* v. *Byrd,* 32 Gratt. 293, 301, where the principles controlling this case are fully and clearly stated, by Judge Staples, it is said: "Even a matter of opinion may amount to an affirmation, and be an inducement to a contract, especially where the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other."

If the purchaser has not equal means of information with the seller (which is the case at bar), if it be a case in which he had the right to rely upon the representation, the evidence to show that he did not rely upon it must be of the clearest and most satisfactory character. In such cases, there ought to be no room for inference or mere implication. *Grim* v. *Byrd, supra.*

So far from the appellants not having relied on the representations in question, it appears that the only source of information they had was through those who made the representations, and that reliance upon those representations caused them to make the contract.

The appellant, W. R. Fitzgerald, after this suit was brought, received from H. W. Duncanson $137.95 on account of rent derived from the Chicago property, which it is claimed was an affirmation of the original transaction. The evidence shows that after the appellant realized that he was about to lose his entire estate as the result of this transaction, he grew rapidly worse in mind and body, and became mentally irresponsible.

Before this $137.95 was sent, Duncanson had been told that Fitzgerald was insane. It cannot be said, under such circumstances, that Duncanson was misled by the acceptance of this rent, or that Fitzgerald intended by its acceptance to affirm a transaction in which he and his wife were jointly interested, and for a rescission of which they then had a suit pending.

Affirmation must be a solemn and deliberate act. When the original transaction is infected with fraud, the confirmation of it is so inconsistent with justice and so likely to be accompanied with imposition, that the courts watch it with the utmost strictness and do not allow it to stand but on the clearest evidence. No man can be bound by a waiver of his rights unless such waiver is distinctly made with full knowledge of the rights which he intends to waive, and the fact that he knows his rights and intends to waive them must plainly appear. *Wilson* v. *Carpenter,* 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824.

Without prolonging this opinion with further details, it is sufficient to say that the facts established by the voluminous record before us justify the conclusion that the appellants have been, by preparation for the wrong, concealment of the truth, and false statements as to material facts, defrauded of their property; and that they are entitled, at the hands of a court of equity, to relief from the imposition practiced upon them.

The decree appealed from must, therefore, be reversed, and the cause remanded for a decree to be entered by the circuit court, rescinding the contract between the parties whereby the exchange of properties mentioned in this cause was agreed to, and vacating and cancelling the deed of November 20, 1905, carrying out such contract; and further requiring Maurice Franklin to reconvey to the appellants all of the property, real and personal, in Pittsylvania county which passed under the deed from them of November 20, 1905; and in default of such reconveyance being made to have said property reconveyed to the appellants by a commissioner appointed for that purpose; and further requiring the appellants to reconvey the Chicago

property to Maurice Franklin, when the amount paid by the appellants on account of the exchange of properties, whether by bond, note or money, and the costs which are herein decreed to the appellants and such costs as may be decreed to them by the circuit court, have been refunded and paid to them.

*Reversed.*