# Wytheville

## RAFFERTY AND OTHERS V. HEATH AND OTHERS.

### June 12, 1913.

1. RESCISSION—*False Representations—Material Facts—Truth.*—The false representation of a material fact, constituting an inducement to a contract for the purchase of real estate, on which the purchaser had the right to rely and upon which he did rely, is always ground for a rescission of the contract by a court of equity. The intent of the party making the representation, and his belief in its truth, are alike wholly immaterial. It is sufficient that the statement was material, was relied on by the purchaser, and was in fact untrue.

2. RESCISSION—*False Representations of Price Paid and Rents Received.*—False representations by a vendor of the price paid by him for the property, and of the amount of rents being actually received by him for it, when relied upon by the vendee, are sufficient to warrant a rescission of the contract of sale by a court of equity upon application therefor by the vendee.

3. RESCISSION—*Placing Parties in Statu Quo.*—In a suit to rescind a contract of sale of real estate, if a court of equity finds that a condition exists which renders it impossible to restore the parties substantially to their original positions, and that to rescind the contract would result in an injustice, the rescission will be refused.

4. RESCISSION—*Rights of Third Persons—Defendants' Objections.*—A defendant cannot defeat a rescission of a contract of sale of real estate procured by his fraudulent misrepresentations upon the plea that he has received and is in the enjoyment of the fruits of his fraudulent practices which he is unable or unwilling to restore. The court will protect the rights of innocent third persons which have intervened, and if this imposes an additional burden on the plaintiff, the defendant cannot complain of it.

Appeal from a decree of the Circuit Court of Mathews county. Decree for the complainant. Defendants appeal.

*Affirmed.*

*Moore, Barbour, Keith & McCandlish, Sleman & Lerch*
and *J. Boyd Sears,* for the appellants.

*Henley, Garnett & Hall* and *Sale, Mann & Tyler,* for the
appellees.

KEITH, P., delivered the opinion of the court.

Heath was the owner of a farm in Mathews county con-
taining about two hundred acres, with improvements upon
it, lying. upon the waters of North·river, together with
about 2,000 bushels of oysters planted in that river ad-
jacent to the farm, all of which he valued at the sum of
$60,000. He entered into' negotiations, through the South-
ern Farm Agency, of Lynchburg, with Charles E. Rafferty
for the exchange of his farm for property in the city of
Washington, known as the Versailles Apartment House,
which resulted in a contract dated September 19, 1910, by
which Heath agreed to sell Rafferty his farm in Mathews
county,· with all the crops, tools, implements, furniture
and other personal property thereon, for the sum of
$60,000, and to take in payment the Versailles Apartment
property in Washington on the basis of $200,000, subject
to first and second liens amounting to $134,500, Rafferty
agreeing to take the difference of $5,500 in preferred stock
in the Versailles Apartment Corporation, and to pay
cash $1,000 additional for preferred stock at par.

In addition to the first and second liens aggregating
$134,500 there was a third lien upon the Washington prop-
erty, amounting to about $13,000, which Rafferty under·
took to satisfy.

On the 22nd of September, 1910, Heath and his wife
made a deed conveying to Rafferty the property set out in
the agreement of September 19. It seems to have been
contemplated by the parties that Rafferty was to have made
a deed of even date to Heath for the Versailles Apartment

House, but there was some delay for reasons not necessary to mention, and the transaction was not consummated until some time in December.

By deed dated the 29th of November, 1910, and recorded on December 8 of that year, Rafferty and wife conveyed to the Versailles Corporation the Versailles Apartment House, subject to encumbrances of $134,500.

The negotiations between Heath and Rafferty finally culminated as follows: Heath conveyed all his Virginia property to Rafferty by an absolute deed, and Rafferty conveyed the Versailles Apartment House to the Versailles Corporation, which was authorized to issue $50,000 worth of preferred stock and $100,000 worth of common stock, Rafferty agreeing to take $5,500 of preferred stock and to buy $1,000 worth of that stock for cash at par; and it was this stock, preferred and common, that constituted the consideration received by Heath for his Mathews farm and personal property.

The deed from Heath to Rafferty is dated September 22, 1910. On the 28th of November, 1910, Rafferty conveyed the same property to a trustee to secure a loan of $16,000 made to him by the Gloucester-Mathews Bank. With this loan he satisfied the third lien resting upon the Versailles Apartment House, which in his negotiations with Heath he had undertaken to pay, and also paid the $1,000 in cash for the shares of preferred stock which he had agreed to purchase from Heath at its face value.

At the conclusion of the transaction, therefore, the title to all of Heath's Virginia property was in Rafferty, subject to the incumbrance which he had placed upon it to secure the Gloucester-Mathews Bank: the title to the Versailles Apartment House, subject to two liens amounting to $134,500, was in the Versailles Corporation and all of the stock of that corporation except preferred stock to the amount of $6,500, which was held by Rafferty, and a few

shares of common stock held by different parties, was held by the appellee, Charles Heath.

Heath went into possession of the apartment house, but very soon became dissatisfied with his bargain, and on the 6th of February, 1911, he filed his bill setting out in detail the facts that we have already stated, and charging that he had been induced to part with his property as a result of a carefully concocted scheme to defraud him, and in reliance upon representations made to him by Rafferty which had proved to be wholly false; that Rafferty had assured him that his Washington city property had cost him $210,000, and was producing an annual net revenue of $10,000; and that in addition to these verbal assurances he had exhibited a statement, which is filed as an exhibit with the bill, from which it appears that the apartments were yielding a net revenue of more than $10,000.

We do not deem it necessary to go into a history of the organization and conduct of the Versailles Corporation, further than to say that its only asset was the Versailles Apartment House, upon which were three liens, amounting in the aggregate in round numbers to $148,000. The evidence proves beyond doubt, we think, that these representations were made and that in reliance upon them Heath was induced to enter into the contract which he now seeks to have rescinded; and that these representations were false and known to be false when they were made. The evidence shows that the value of the property was far less than Rafferty represented it to be—but let that pass as a matter of opinion only. It appears that it cost far less than he represented it to have cost, and upon the evidence it is doubtful if it could be sold for enough to satisfy the liens upon it; but the most material misrepresentation which he made was as to the rents which were actually being received upon it. Upon consideration of the whole evidence we cannot resist the conclusion that the

whole transaction was the outcome of a carefully contrived plot to deceive and defraud the appellee.

It seems to be superfluous to cite authorities upon such a case, and we shall content ourselves with only a few.

In *Wilson, Trustee,* v. *Carpenter,* 91 Va. 183, 21 S. E. 243, 57 Am. St. Rep. 824, it is said: "The false representation of a material fact, constituting an inducement to a contract for the purchase of real estate, on which the purchaser had a right to rely, is always ground for a rescission of the contract by a court of equity. The intent of the party making the representation, and his belief in its truth, are alike wholly immaterial. It is sufficient that the statement is material, was relied on by the purchaser, and was in fact untrue."

In *Fitzgerald* v. *Frankel,* 109 Va. 603, 64 S. E. 941, a case which has a great many points in common with that under consideration, this court said: "If the purchaser of property has not equal means of information with the seller, and he has the right to rely upon representations made by the seller with reference to the proprty, evidence to show that he did not rely upon such representations must be of the clearest and most satisfactory character. In such cases there ought to be no room for inference or mere implication." See also *Cerriglio* v. *Pettit,* 113 Va. 533, 75 S. E. 303.

The appellee seems greatly to rely upon the inability of the court to place the parties in the same position which they occupied before the agreement was entered into which it is sought to rescind.

As the plaintiff comes into a court of equity asking relief, he can only obtain it, of course, upon equitable terms. If, therefore, in a particular case a court of equity finds that a condition exists which renders it impossible to restore the parties substantially to their original position, and that to rescind the contract would result in an injustice, the rescission will be refused.

But we are of opinion that no such condition exists in this case. The appellee acted with the greatest promptness. The exchange of the property was not finally concluded until some time in December, 1910; it was promptly repudiated and a demand for rescission made almost immediately; and the bill in this case was filed on the 6th of February, 1911. The legal title to the apartment house was never in Heath, the appellee. As has been said, he took it subject to two liens by mortgage or deed of trust, and the legal title was therefore outstanding in the trustees or mortgagees. The equity was conveyed by Rafferty's deed of December 8, 1910, to the Versailles Corporation, and all that Heath ever received were the shares of stock, preferred and common, in the Versailles Corporation, and the rents of the apartment house for a short period, all of which he accounted for. The only material alteration in the condition of the parties was the result of the act of the appellant who placed a mortgage upon the Mathews property to secure the Gloucester-Mathews Bank. That incumbrance is a legal and binding lien which must be paid and the proceeds of which passed to and were enjoyed by Rafferty. It would be a strange result indeed if he could defeat the rescission of a contract procured by his fraudulent misrepresentation upon the plea that he had received and was in enjoyment of fruits of his fraudulent practices which he was unable or unwilling to restore.

The decree appealed from as far as possible in every particular preserves the rights of every party to the controversy, and is, therefore, affirmed.

*Affirmed.*