# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## C. B. FOREMAN v. A. E. CLEMENT.

### June 12, 1924.

1. REMOVAL OF CAUSES—*Transfer of Case from Law to Chancery Side of Court—Mutual Mistake—Accounting—Case at Bar.*—In the instant case, an action on a note given plaintiff by defendant as part payment for plaintiff's "equity and good will and interest of all kinds" in a partnership of which defendant and another were members with plaintiff, before going to trial defendant moved the court to transfer the case to the chancery side of the court, under section 6084 of the Code of 1919, on the ground that as the defendant had filed his plea of a mistake in the accounts, he was entitled to demand an accounting between the partners. It appeared from the evidence that there was no mutual mistake of fact as to the accounts, nor, indeed, any mistake of actual fact, but merely a difference in the opinions—the estimates and conjectures—of the respective parties, at the time of the transaction in question, as to what would be the net result arising from uncertain future events. The accounts were admittedly correct as they stood on the books.

   *Held:* That the court did not err in overruling the motion of the defendant.

2. APPEAL AND ERROR—*Error in Setting Aside Verdict on First Trial—Record not Showing Evidence on First Trial.*—Where there have been two trials in a case and the court set aside the verdict on the first trial in favor of defendant, and the second trial resulted in a verdict in favor of plaintiff, and the evidence on the first trial, with an immaterial exception, did not appear from the record, the question whether the court erred in setting aside the verdict on the first trial was not before the appellate court.

3. NEW TRIALS—*Verdict Set Aside as Without Evidence to Support it—Action on Note Given as Part Payment for Plaintiff's Interest in Partnership—Allegation of Mutual Mistake—Case at Bar.*—In the instant case, an action on a note given by defendant to plaintiff as part payment for plaintiff's interest in a partnership composed of plaintiff, defendant and another, defendant alleged in his grounds of defense that the total sum agreed upon to be paid by defendant to plaintiff for plaintiff's interest was settled upon by a mutual mistake as being the net

assets of the partnership. It was apparent, however, in arriving at the price to be paid for plaintiff's interest, that a considerable sum had been deducted from the book figures for cost of collection. Precisely what that cost would be was a mere matter of opinion as to which both parties had to exercise their own judgment. Moreover, there was the good will which was purchased, the value of which was a matter of opinion.

*Held:* There was no evidence to support the allegation of mutual mistake.

4. Mistake and Accident—*Relief in Equity—Mistake must be Mutual.*— A party will not be relieved from his obligation to pay money, on the ground that he was induced to enter into the obligation by his own mistake merely (even if it be a mistake of fact, and not merely an error of opinion), which was not also a mistake of the party to whom the obligation was given (*i. e.,* where the mistake of fact was not mutual), unless such mistake was induced by the fraud or inequitable conduct of the obligee.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action at law, by notice of motion, of the defendant in error (hereinafter called plaintiff), seeking to recover judgment against the plaintiff in error (hereinafter called defendant), upon a certain note dated May 3, 1920, whereby the defendant obligated himself to pay to the plaintiff, on May 1, 1921, the sum of $1,000.00, with costs of collection, or any attorney's fee, if incurred. This note was given by the defendant to the plaintiff for a part of the purchase money owing by the former to the latter for the "equity and good will and interest of all kinds" of the latter in a certain partnership theretofore composed of the plaintiff and defendant and another person (Lolita Luton, afterwards Mrs. Johnson), doing business under the firm name and

style of Foreman Piano Company, as equal partners, the interest of the defendant therein being one-third. The terms of said purchase and the total consideration therefor appear from a receipt in writing given by the plaintiff to the defendant on the date of and contemporaneously with the execution and delivery of said note, to-wit, May 3, 1920, the material portions of which receipt are as follows:

"Received from C. B. Foreman * * $5,000.00 in full for my equity and good will and interest of all kinds to date in Foreman Piano Company, the money to be paid as follows: $2,000.00 cash and the balance of $3,000.00 to be paid in three years, as per notes given.

"It is understood that I am no longer responsible in any way whatever for any bills now, or in the future, pertaining to Foreman Piano Company.

"(Signed) A. E. Clement."

As evidencing that this receipt correctly set forth the consideration for and the terms of the aforesaid purchase, it was countersigned by the defendant.

The defendant filed his grounds of defense, denying liability upon said note on the ground that there was a failure of consideration therefor, due, as alleged, to a mutual mistake of himself and the plaintiff as to the amount of assets of the partnership of the Foreman Piano Company, claiming that one-third of such net assets, at the time of the aforesaid purchase, amounted only to $928.76, instead of $5,000.00, the aforesaid agreed price for the aforesaid one-third interest of the plaintiff, purchased by the defendant as aforesaid; that the said cash payment of $2,000.00 overpaid the plaintiff, the true amount owing to him, by $1,072.00 (the correct figures, however, of that sum being $1,071.24, on

that theory of the case); and the defendant asked for judgment against the plaintiff for $1,072.00.

There was a trial by jury, which resulted in a verdict in favor of the defendant against the plaintiff for the sum of $1,074.21, with interest from May 3, 1920.

On motion of the plaintiff the court set aside that verdict and granted a new trial.

What evidence was introduced on the first trial does not appear from the record before the appellate court, with the exception of a certain account referred to in the grounds of defense, which is not material to the decision of the case upon the appeal.

Thereafter there was a second trial of the case which resulted in a verdict in favor of the plaintiff against the defendant for $1,000.00, the amount of the note sued on, with interest from May 3, 1921, the due date of the note, and for an attorney's fee not to exceed $100.00.

The evidence introduced on the second trial appears in the record before the appellate court, and, so far as material, was as follows:

A. E. Clement testified about as follows:

"That he was a plaintiff in this case and the owner of the note sued on. That the note was given as part of the consideration for his equity, good will and interest of all kinds in the Foreman Piano Company, which he had sold to C. B. Foreman for the agreed price of $5,000.00, to be paid $2,000.00 in cash and $3,000.00 in notes; that the $2,000.00 in cash has been paid to him, and he had received three notes of $1,000.00 each in the settlement, the notes being dated May 3, 1920, and were payable one, two and three years after date. That the note sued on was the note payable one year after date, which had not been paid when due, and had never been paid, and was still due and owing to him.

    *      *      *      *      *      *      *      *

"That the agreement between C. B. Foreman and himself for the sale of his interest was made after negotiations between them. That some time after he came to Norfolk to take an active part in the business, C. B. Foreman came to him one morning and told him that one of them would have to get out of the business; that he thought he was joking and said so, but soon saw he was not, and that he meant it. That he did not know what to think. Foreman told him that he would buy him out, or Clement could buy him out. Clement told Foreman that he would have to think about it. After thinking about it, Clement told Foreman he did not want to run the business, and Foreman asked what he would take for his interest; that he told him he did not know, but would have to figure it up. That he went over the books and made a calculation and it came to about $25,000.00, and Foreman again asked him what he would take and he said: 'I will take $5,000.00 for my part.' That he had figured that his interest was something over $8,000.00, and Foreman said he would not give it, and that after further talk between them, he, Clement, told Foreman that he would take $6,000.00 and Foreman said he would not give it and walked away. That ended the matter for the time being; afterwards he came back and said he would give me $5,000.00, and thinking about it a little while I told him I would take it. He said he would not pay it in cash, but would give me $2,000.00 in cash and three notes of $1,000.00 each, and they came to an agreement on that. That on the next day he paid him $2,000.00 and gave him the notes, and a receipt and agreement was made and signed by them both."

(This receipt and agreement was introduced in evidence and identified by the witness, and appears above.)

"That he dictated the agreement to Miss Luton, and

it was signed by Foreman and himself in the presence of Miss Luton, and she witnessed it.   That the transaction between him and C. B. Foreman was not a distribution of the assets of the firm; but was a sale by him of all his equity and good will and interest of all kinds in the firm.

"That he took off the account from the books; that Foreman was present when he took off the accounts; that if he made a mistake as to what the assets were it was an honest mistake, but that he had not made a mistake.   That the amount of consideration was arrived at on a one-third basis of the assets and good will of the Foreman Piano Company."

C. B. Foreman testified as follows:

"That he, Clement and Loleta Luton (now Mrs. Loleta Johnson) had started in business under the firm name of Foreman Piano Company, in January, 1918, each investing in the business the sum of $500.00 and to share as one-third partners in the business, Foreman and Miss Luton being active partners; Foreman to receive a salary of $25.00 per week and Miss Luton to receive a salary of $15.00 per week, and Clement to be a silent partner but receive no salary, he taking no active part in the business.   That some time in the early part of March, 1920, Clement wrote to him from Boston that he was coming to Norfolk to take an active part in the business; that he (Foreman) told him not to come as things were too dull, and the business would not justify paying a salary to another active member of the firm; however, Clement insisted and resigned his position in Boston and came here and demanded a salary of $60.00 per week, and started to work some time in March.   Clement suggested that they borrow on such contracts as they had that had been paid for by them (Foreman Piano Company), so they borrowed $4,000.00

on $5,100.00 worth of contracts that they had paid the consignor for.

"That after Clement had been there in the neighborhood of six weeks he (Foreman) saw the business would not support all three partners as active members drawing salaries, and Clement never having made a sale during the whole time he took an active part, stated to Clement that, 'One of us has got to get out,' Foreman said: 'What will you take?    I will give you $2,000.00,' and Clement said, 'I will not take it.'   He said 'We will go over the books and see what the assets are,' and he went over the books and said that the assets were $16,000.00, and that it would cost something to collect the money, and that he would take $5,000.00 for his interest, and we settled on that basis, paying him $2,000.00 cash and giving him three notes for the balance.    That the consideration was based on the assets as arrived at on that day.    That shortly after the settlement he (Foreman) found that they had made a mistake as to the assets and had overpaid Clement, giving him more than one-third of the assets, and wrote Clement a letter to the effect that the Foreman Piano Company was not worth that much money at the time of settlement, and that since then he had had the accounts taken off and that instead of being worth $16,000.00 they were worth around $3,000.00.    That when they had taken off the accounts they had failed to charge any expense and had taken off the gross profits without figuring against it any expenses whatever.    That he thought the account was right when taken off, but was mistaken as they had not properly calculated and had not made charges against the amount taken off as they should have done.

"That the business operated by the Foreman Piano Company was a consignment instalment piano business; that they never owned any of the pianos, but all of the

pianos were sent to them from Hallet & Davis of Boston; they, in turn, sold the pianos on the instalment plan, keeping the cash payment and sending the contracts on to Hallet & Davis, who received all of the payments until they were paid in full, at which time the contracts were returned to the Foreman Piano Company and the balance collected was theirs to keep. That at the time of the settlement the total amount of contracts which had been paid for and returned to them was $5,100.00, and these were the contracts on which they borrowed the $4,000.00; that it was necessary in order to collect the balance of the payments of this business that they maintain a store where the accounts were paid, and to be in a position to retake pianos in case of default of payment and resell them. That none of this overhead expense was taken into account at the time of settlement and charged against the $16,000.00 which the books showed as gross profit. That at the time of the trial the payments on the pianos sold during the time of the copartnership had not been completed."

There was also the testimony of an accountant, a witness for the defendant, which was to the effect that there was no error or mistake in the entries appearing on the books of said partnership at the time of said purchase by the defendant; that the books showed, as of that time $36,961.45 as the unrealized gross profits of the partnership, and that the books did not purport to show what would be the expense of realizing such profits. And it appears from the testimony of such witness and from the other evidence that what might prove to be the actual amount of such expense depended upon future events which were in their nature uncertain; so that the amount of such expense and the resultant net profits which would be derived out of the

aforesaid gross profits necessarily rested upon opinion—that is, upon estimate and conjecture.

There are but two assignments of error, namely:

1. That before going to trial the defendant moved the court to transfer the case to the chancery side of the court, under section 6084 of the Code; that the court erred in overruling such motion; and

2. That the court erred in setting aside the verdict on the first trial and granting the plaintiff a new trial.

*Page, Page & Page,* for the plaintiff in error.

*Old & Brockenbrough,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will be disposed of in their order as stated below.

[1] 1. Did the court err in overruling the motion of the defendant, made before the trial, that the court transfer the case to the chancery side of the court, under section 6084 of the Code?

The question must be answered in the negative.

No authority is cited to sustain the position in question taken for the defendant. It is said in the petition for the writ of error that the defendant, "having filed his plea of a mistake in the accounts," he was entitled to "demand an accounting between the partners, * * which was a matter for chancery jurisdiction, inasmuch as a court of law could not" afford that relief. Of this position we deem it sufficient to say that it is obvious that the plea mentioned did not entitle the defendant to an accounting between the partners, in view of the facts disclosed by the evidence. It appeared from that evidence, without conflict, that there was no mutual

mistake of fact at all, such as was alleged, nor, indeed, any mistake of actual fact, but merely a difference in the opinions—the estimates and conjectures—of the respective parties, at the time of the transaction in question, as to what would be the net result arising from uncertain future events. There was no error in the accounts to be corrected, and no conflict in the accounts as they appeared on the books to be reconciled. The accounts were admittedly correct as they stood on the books.

[2] 2. Did the court err in setting aside the verdict on the first trial?

Accurately speaking, the record before us does not present this question for decision. The evidence on the first trial, with an immaterial exception, does not appear from the record before us.

[3] However, if we were to assume that the evidence on the first trial was the same as that on the second trial (which is all that the defendant could contend for), it is apparent therefrom that there was no evidence whatever before the jury to sustain the verdict on the first trial, which found, in effect, that the defendant agreed to pay the plaintiff for the one-third interest of the latter in the aforesaid partnership, consisting of the plaintiff's interest in the "equity and good will and interest of all kinds to date" in such partnership, the sum of $5,000.00, solely because both the plaintiff and defendant, at the time of the purchase and when the note was given, as aforesaid, by mutual mistake, as alleged in the grounds of defense by the defendant, settled on that sum as being the *net assets of the partnership.* If we consider the testimony of the defendant alone, we see that he testified that the plaintiff "went over the books and said that the assets were $16,000.00, *and that it would cost* something to collect the money." (Italics supplied.)

Precisely what the latter cost would be was not stated by either party, nor shown by the books. Such collection cost was, therefore, according to the defendant's own testimony, a mere matter of opinion as to which both parties had to exercise their own judgment. Moreover, in the light of the evidence for the defendant—the testimony of the accountant—that the books at this time showed a gross profit, not of $16,000.00, but $36,961.45, it is apparent that the plaintiff in arriving at the figures of $16,000.00, mentioned by the defendant, had deducted from the profits shown by the books nearly $21,000.00 to cover estimated future expenses of realizing upon the assets of the concern, other than the expense mentioned of collecting the money; and further deducted from the $16,000.00 figures a considerable sum—just what does not appear in evidence—as estimated expense of collecting the money. There was, therefore, absolutely no evidence to sustain the aforesaid allegation of mutual mistake, and hence no evidence to support the verdict on the first trial in this essential particular. Therefore, even if we could consider the question as presented for decision by the record before us, we would be compelled to hold that the court committed no error in setting aside the verdict on the first trial, as there was no evidence to support it in the essential particular just mentioned.

Still further: There was the "good will" which was purchased, the value of which was a matter of opinion.

[4] It is settled, and, of course, well understood, and it is not controverted in argument before us, that a party will not be relieved from his obligation to pay money, on the ground that he was induced to enter into the obligation by his own mistake merely (even if it be a mistake of fact, and not merely an error of opinion), which was not also a mistake of the party to whom the

obligation was given, *i. e.*, where the mistake of fact was not mutual; unless such mistake was induced by the fraud or inequitable conduct of the obligee.    There is no evidence, and no claim even, in the record before us, of any such fraud or inequitable conduct, and none, as aforesaid, of any such mutual mistake.

The case will therefore be affirmed.

*Affirmed.*