# Fox-Sadler Company, Inc.

## v.

# Earl E. Norris Roofing Company, Inc.

Record No. 820112

Decided March 8, 1985, at Richmond

Present: All the Justices

.

Donald H. Clark (Mary Keating; Clark & Stant, P.C., on briefs), for appellant.

Vann H. Lefco (Livesay & Lefcoe, Ltd., on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This appeal poses questions concerning the mutual-mistake exception to the parol evidence rule and the rule requiring a claimant to mitigate damages.

Appellant Fox-Sadler Company, Inc. (Fox), the defendant below, is a general construction contractor. Appellee Earl E. Norris Roofing Company, Inc. (Norris), the plaintiff below, is a roofing contractor. Both parties have had more than 20 years' experience in the construction business. Norris filed a motion for judgment against Fox alleging that "[b]y contract dated August 17, 1978, plaintiff contracted with defendant to provide roofing and sheet-metal work on defendant's project". Norris claimed that Fox was "indebted to the plaintiff in the amount of $8,463.50 representing contract sums due". In a counterclaim, Fox demanded $2,400.00 in damages resulting from Norris's alleged breach of the terms of the contract.

Prior to trial, the parties stipulated that, with respect to the items in agreement, Fox had paid Norris all but $1,496.00 due

under the "Adjusted contract sum". The parties agreed that this stipulation was made "without prejudice to the right of Norris to allege and prove its claim . . . [for] $5,685.00". That figure included, among other things, $3,800.00 for "gutter and downpipe", $895.00 for "chimney caps", and $560.00 for "roof vents". It was further agreed that the stipulation was made "without prejudice to the right of Fox to allege and prove its counterclaim of $2,757.81". The jury awarded Norris $7,181.00 — the unpaid balance of the adjusted contract sum plus the full amount of its modified claim. The jury also returned a verdict for Fox for $1,378.90 on its counterclaim. Fox appeals from the judgment confirming the two verdicts.

Insofar as pertinent to this appeal, the "Sub-Contract Agreement", dated August 17, 1978, provided that Norris "will furnish all materials and labor . . . and fully construct and in a good substantial, thorough and workmanlike manner perform and in every respect complete all the roofing and sheetmetal work, Sections 7A & 7B on [Fox's project] . . . according to the plans and specifications".

Section 7A of the architect's specifications, entitled "Roofing", required Norris to "[i]nstall all vent flashing, and roof vents." Under Section 7B, entitled "Sheet Metal Work", Norris agreed to "[p]rovide all sheet metal work including, but not limited to . . . [m]etal flashing, counter flashing, edge strips, cap flashing, crickets, chimney caps and cleats . . . [d]ownspouts, gutters and concrete splashblocks."

## A. *The Verdict for Norris*

The parol-evidence issue raised by Fox's first assignment of error is addressed to the judgment confirming the verdict awarded Norris. Over Fox's objection that extrinsic evidence was not admissible to vary the written contract, Earl E. Norris, the plaintiff's president, was permitted to testify that, prior to execution of the written contract, the parties had reached an oral agreement. Mr. Norris testified that the oral agreement pertained to supply and installation of roofing materials and flashing and that guttering was not included. He acknowledged, however, that he had "met with Mr. Fox's take-up man . . . and we went over the plans and specifications" and that he had read the written contract before he signed it.

Called by Norris as an adverse witness, A. M. Fox, Jr., the defendant's president, was questioned about the negotiations leading to execution of the contract. Asked if he and Mr. Norris had discussed "the cost of doing just the roofing, not the guttering or sheet metal work", Mr. Fox replied, "We discussed the whole job because it had to go to one subcontractor." According to Mr. Fox, it was agreed that Norris "was going to do all the work that was required in Section 7A and 7B of the specifications". Mr. Fox had made handwritten notes of his telephone conversation with Mr. Norris, and Norris offered a copy as plaintiff's exhibit. The notes indicated that the contract price was based on "425 squares at $90 per square". Counsel for Norris, observing that cost estimates for guttering are calculated by the lineal foot rather than by the square, enquired if Mr. Fox was "talking to Mr. Norris about $90 a square, which would include guttering", and Mr. Fox replied, "That's correct." Mr. Fox testified that he told Mr. Norris that the contract price was too high and that "he gave me a rough breakdown of it." As reflected in the notes, the "breakdown" included an item for "gutters". Mr. Fox conceded that "[w]e didn't discuss chimney caps and vents". He explained that "[i]t was assumed by everyone that it was part of the fireplace . . . contract" but, "[a]s it turned out, it was not."

After the roofing and flashing had been installed, Mr. Norris told Mr. Fox that he "had not received the contract on the guttering". Insisting that guttering was included in the August 17, 1978 contract, Mr. Fox told Mr. Norris, "Go ahead and do it and we'll get it straight." Norris installed the gutters and submitted a bill for $3,800.00 which Fox refused to pay.

One of the instructions to the jury included the following:

[W]here due to the mutual mistake of both parties the language used in a written contract is broader in its meaning than was in fact intended by the parties . . . oral evidence may be received to narrow and restrict the meaning of the language used so that it will accord with the actual meaning of the parties, provided that the evidence of the mistake is clear and convincing.

Fox does not challenge the accuracy of this language as a definition of the mutual-mistake exception to the parol evidence rule. Rather, Fox contends that the evidence concerning oral negotia-

tions, even if admissible for the limited purpose of resolving Norris's claim of mutual mistake, fails to support the claim. We agree.

The pre-trial stipulation concerning Norris's $5,685.00 claim included charges for chimney caps and vents. In light of Mr. Fox's testimony below, the only damage item sought by Norris which is fairly disputed on appeal is the cost of guttering.

Guttering was expressly included in the specifications incorporated in the subcontract agreement. Although we assume that Mr. Norris honestly thought it was not included, Mr. Fox thought otherwise. To Mr. Fox, inclusion of guttering was not a mistake, but was a written memorial of one of the constituent items of the lump-sum "breakdown" identified by Mr. Norris in the telephone conversation.

But, to satisfy the mutual-mistake exception, the mistake must be one common to both contracting parties. "Parol evidence is never competent to show merely what one of the parties to a contract thought." *Title Ins. Co.* v. *Howell,* 158 Va. 713, 718, 164 S.E. 387, 389 (1932); *see also Foreman* v. *Clement,* 139 Va. 70, 80-81, 123 S.E. 336, 339 (1924). We hold, therefore, that any mistake with respect to guttering was unilateral and that the trial court erred in admitting parol evidence to contradict Norris's written commitment. Because the jury's verdict awarding Norris $7,181.00 was based, in part, upon the mutual-mistake instruction, we will reduce the judgment by $3,800.00 (the extra charge for guttering) and enter a modified judgment for Norris in the sum of $3,381.00.

## B. *The Verdict for Fox*

The mitigation-of-damages issue raised by the second assignment of error is addressed to the judgment confirming the verdict awarded Fox on its counterclaim.

Fox's architect testified that Norris had installed the metal flashing improperly. His drawings pictured the flashing turned up eight inches. Norris turned it up no more than two inches and bent the metal by hand, leaving the corners rounded. As a result, rain and snow leaked into the buildings. Mr. Fox testified that Mr. Norris agreed to correct the defect but never did. Fox had the problem repaired by others at a cost, documented by paid invoices, of $2,757.81, the total mentioned in the pre-trial stipulation.

Norris offered no evidence to contradict the expense Fox incurred. Instead, Norris maintained that much of the expense could have been avoided. Mr. Norris testified that Bud Mitchell, Fox's job supervisor, had asked him if the flashing was "turned up high enough" and that he had told him that "this is normal, it's the standard way of doing that." According to Mr. Norris, this conversation had occurred when only "two or three" of the 20 units had been flashed and, after that, "[n]o more was said about it." The expense entailed would have been much less, he said, if Fox had instructed him to correct the defect before the flashing was covered with "siding" by other workers.

Borrowing language from *Hannan* v. *Dusch,* 154 Va. 356, 377, 153 S.E. 824, 831 (1930), Norris asked the trial court to instruct the jury that a party claiming damages for breach of contract has a duty to use ordinary care to mitigate damages resulting from the breach. The court particularized the rule in the following terms:

> If you believe from the evidence that [Fox], through its agents, knew or should have known that [Norris] had turned the flashing up only 1½ inches instead of 8 inches, and if you further believe that any of the damage allegedly resulting from the failure to turn the flashing up 8 inches could have been avoided had [Fox] or its agents used ordinary care to cause the flashing to be corrected before causing the buildings to be completed, and if you believe that [Fox] did not use ordinary care to bring about such corrections, then you may find for [Fox] on its counter-claim only in such amount as you believe from the evidence to have been the actual cost of correcting the flashing at the time the defect was or should have been discovered by [Fox].

In paraphrase, this instruction told the jury that, if Fox, through its agent Mitchell, "knew or should have known" that Norris had not complied with the flashing specifications, Fox had a duty to "cause the flashing to be corrected before causing the buildings to be completed" and that Fox should bear any loss flowing from its violation of such duty.

We believe the instruction misstated the predicate for Fox's duty under the facts of this case. Fox's agent, Mitchell, questioned the sufficiency of the flashing. But, absent evidence

that Mitchell knew or should have known that Norris's failure to turn the metal up higher would result in damage, Fox had no duty to mitigate. There was no such evidence. Indeed, Mr. Norris assured Mitchell that his workmanship was "normal" and "the standard way of doing that" and, thus, led him to believe there was no damage to mitigate.

Norris had the burden of proving that Fox had a duty to mitigate damages and that he violated that duty. *Foreman* v. *Caligari, Inc.,* 204 Va. 284, 290, 130 S.E.2d 447, 451 (1963). Norris did not carry its burden, the instruction constituted prejudicial error, and we will modify the verdict awarded Fox on its counterclaim. Since Fox's evidence of liquidated damages was documented and uncontroverted, we will enter final judgment for Fox in the sum of $2,757.81.

*Modified and final judgment.*