467 S.E.2d 279

Donald F. COLLINS

v.

DEPARTMENT OF ALCOHOLIC BEVERAGE
CONTROL, et al.

Record No. 1053–94–1.

Court of Appeals of Virginia,
Norfolk.

Feb. 20, 1996.

Benton, J., dissented with opinion.

672

From The Virginia Workers' Compensation Commission.

Karen M. Rye, Norfolk, for appellant.

W. Mark Dunn, Assistant Attorney General (James S. Gilmore, III, Attorney General; Gregory E. Lucyk, Senior Assistant Attorney General, on brief), for appellees.

Present: BAKER, BENTON, JJ., and HODGES, Senior Judge.

BAKER, Judge.

In this appeal from a decision of the Workers' Compensation Commission (commission), Donald F. Collins (claimant) contends that the commission erroneously permitted the Department of Alcohol Beverage Control and its insurance carrier (jointly referred to herein as employer) to recoup the overpayment of compensation benefits paid to claimant pursuant to an award. The commission found that because the calculation of claimant's average weekly wage had been based upon inaccurate information resulting in an erroneous award, "there has been a mutual mistake that entitled the employer to recoup the overpayment." Claimant asserts that the evidence does not support a finding of mutual mistake of fact and that Code §§ 65.2–708 and –712 prohibit retrospective recoupment of monies paid under an open award. For the reasons that follow, we affirm.

The material facts are not in dispute. Claimant sustained a compensable injury by accident on August 5, 1992, at which time his disability was accepted by employer as compensable. Initially, employer's insurance adjuster had difficulty obtaining a wage chart from employer. She requested that claimant

provide her with his last eight pay stubs to enable her to calculate his average weekly wage. The adjuster took this action in order to alleviate claimant's concerns that he would have no money to buy Christmas gifts or pay his bills.

Using the eight pay stubs as a basis, the adjuster calculated claimant's average weekly wage to be $534.24. If that sum were accurate, claimant would have been entitled to an award of $356.17 weekly benefits. The adjuster prepared a memorandum of agreement that was executed by the parties and presented to the commission for approval. The agreement certified that claimant's pre-injury average weekly wage was $534.24. On January 11, 1993, the commission entered an award approving the agreement. The award was not in accord with Code § 65.2–101 because it was based upon sums in excess of claimant's average weekly wage.

On February 23, 1993, employer forwarded to the adjuster a wage earning chart covering the period from July 1, 1991 to July 30, 1992.[1] That chart disclosed that claimant's average weekly wage was $210.64 instead of $534.24, which had been calculated from the eight pay stubs. Based upon an average weekly wage of $210, claimant's weekly compensation benefits should have been $140.43 instead of $356.17. Compensation has been paid through August 1, 1993 in an amount equal to the award.

Employer filed a form entitled "Application for Hearing" and requested that the award be vacated. Employer also sought permission to recoup its overpayments by off-setting credits against future benefits it would be required to pay claimant.

The foregoing evidence was presented to a deputy commissioner, who found as follows:

A review of the evidence leads us to conclude that the significant difference between the average weekly wage reflected on the Memorandum of Agreement and the actual

---

1. That is the period beginning one week prior to claimant's injury, as required by Code § 65.2–101.

average weekly wage constitutes imposition. Furthermore, we find under these circumstances that the employer is entitled to a credit for overpayment made for excess compensation benefits and penalties in the amount of $8,629.60. There is no dispute concerning the claimant's average weekly wage at the time of the injury but rather only as to whether or not the Award should be adjusted and the credit granted. We find they should.

The commission affirmed the finding that employer was entitled to credit for the overpayment but based its conclusion on mutual mistake of fact, not imposition, and said:

The Commission clearly has authority to amend an average weekly wage which results from fraud, imposition or mutual mistake. In this case, there has been a mutual mistake as to the claimant's average weekly wage, and the employer is entitled to recoup the overpayment. The Opinion appealed from is AFFIRMED with the MODIFICATION that $60.00 per week shall be deducted until the overpayment is recovered.

■ As applicable to the case before us, "average weekly wage" means the total earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two. *John Driggs Co. v. Somers,* 228 Va. 729, 732, 324 S.E.2d 694, 696 (1985); Code § 65.2–101(1)(a). If the average weekly wage is miscalculated and the employer voluntarily has paid the claimant sums that were not due, the employer may recoup the sums by credits or a shortened period of time for which compensation must be paid, subject to the approval of the commission. Code § 65.2–520.[2] Here, the claim had advanced to a stage beyond the

---

2. **Code § 65.2–520. Voluntary payment by employer.**—Any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this title were not due and payable when made, may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation provided that, in the case of disability, such deductions shall be made

provisions of that code section. An award based upon an agreed memorandum had been made by the commission, and the overpayment was made pursuant to that award, not voluntarily.

■ Claimant argues that if employer's application for a hearing was based upon a change in condition pursuant to the provisions of Code § 65.2–708, he cannot recoup the overpayment made prior to filing his application, as relief granted pursuant to a change in condition may be prospective only. *See Bristol Door & Lumber Co. v. Hinkle,* 157 Va. 474, 161 S.E. 902 (1932). Employer contends that its application for a hearing was not premised upon Code § 65.2–708, but, instead, was based upon the doctrine of imposition established not by statute but rather by the courts. *See Somers,* 228 Va. at 735, 324 S.E.2d at 697; *Harris v. Diamond Constr. Co.,* 184 Va. 711, 36 S.E.2d 573 (1946); *Avon Prods., Inc. v. Ross,* 14 Va.App. 1, 415 S.E.2d 225 (1992).

Claimant concedes that, in appropriate cases, the doctrine of imposition may be applied. Claimant argues, however, that the commission did not base its decision upon the doctrine of imposition but, instead, erroneously ordered recoupment based upon mutual mistake of fact. Claimant argues that the record does not support a finding of mutual mistake of fact and that the provisions of Code §§ 65.2–500, –707, and –712 do not permit retrospective credits for overpayment made pursuant to an award.

Employer asserts that these code sections do not bar recoupment. Employer concedes that if its application for a hearing were premised upon change in condition provided for by Code § 65.2–708, it could only recover prospectively. *See Hinkle,* 157 Va. 474, 161 S.E. 902. Employer argues, however, that it requested that the January 11, 1992 award be vacated upon principles of imposition. In support thereof,

---

by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

*See National Linen Serv. v. McGuinn,* 5 Va.App. 265, 362 S.E.2d 187 (1987).

employer contends that the deputy commissioner was correct in applying the doctrine of imposition and that neither Code §§ 65.2–500, –708, nor –712 bar its request. Employer also contends that nothing in Code §§ 65.2–500 or –712 prohibits an employer from recouping by credits or prohibits the use of the imposition principle.

Claimant concedes that employer is entitled to relief but contends that credits should be allowed only on overpayments made after employer's application for a hearing was filed; that is, prospectively. Claimant bases this contention upon the prohibitions contained in Code §§ 65.2–520,[3] –708, and –712.

Nothing in this record shows that employer's application for a hearing was based upon the change in condition provisions contained in Code § 65.2–708. That code section is not controlling. Of the statutes relied upon by claimant to limit the payments, only Code § 65.2–712 contains language that arguably is relevant. In pertinent part, that code section provides:

> Any payment to a claimant by an employer or insurer which is later determined by the Commission to have been procured by the employee by fraud, misrepresentation, or failure to report any incarceration, return to employment or increase in earnings may be recovered from the claimant by the employer or insurer either by way of credit against future compensation payments due the claimant, or by action at law against the claimant.

We now turn to claimant's substantive argument that the commission is not authorized to order recoupment by credits against future payments for overpayment made pursuant to an award and prior to employer filing its application for hearing, whether by applying either Code § 65.2–712 or the doctrine of imposition.

■ "The general principle that statutes should be given a prospective rather than a retrospective construction has been

---

**3.** Code § 65.2–520 concerns only payments made voluntarily and is not involved in this case.

678

given statutory approval in Code § 1–16." *Brushy Ridge Coal Co. v. Blevins*, 6 Va.App. 73, 79, 367 S.E.2d 204, 207 (1988).

> Retrospective laws are not favored, and a statute is always to be construed as operating prospectively, unless a contrary intent is manifest; but the legislature may, in its discretion, pass retrospective and curative laws provided they do not partake of the nature of what are technically called *ex post facto* laws, and do not impair the obligation of contracts, or disturb vested rights; and provided, further, they are of such nature as the legislature might have passed in the first instance to act prospectively.

*Id.*

We have been cited no authority, and have found none, that permits the commission to use the imposition doctrine to override the clear provisions of a workers' compensation statute. Claimant argues that except as provided in Code §§ 65.2–500, –708, –712, –1105, and –1205, the commission has no authority to "deprive the claimant of compensation already paid pursuant to an award."

We have examined the workers' compensation code sections that provide relief to claimants and employers alike and find no specific statute that authorizes the commission to grant retrospective relief to an employer when it files a motion to vacate the commission's order that has been entered pursuant to the memorandum of agreement submitted jointly by claimant and employer.

In *Harris v. Diamond Constr. Co.*, 184 Va. 711, 717, 36 S.E.2d 573, 576 (1946), the Supreme Court asked: "Has [the commission] the implied authority to do so?" In answering that question in the affirmative, the commission noted that "the purpose of the Workers' Compensation Act is to compensate injured workers for lost wages, not to enrich them unjustly." We agree with that principle. *Harris* teaches us that the commission's power to act upon a motion to vacate an award mistakenly entered is not limited to specific code provisions:

The Virginia Workmen's Compensation Act contains no express provision authorizing the Commission to entertain such a petition. Has it the implied authority to do so?

Some courts take the view that the judicial functions of tribunals of this character are limited by the express terms of the act, and that they have no implied powers beyond those expressly granted them by the legislature. Consequently, these courts hold that an award procured through fraud or mistake can not be vacated in a proceeding before the commission, but that the parties must resort to a court of equity in an independent suit for relief.

On the other hand, the highest court of Indiana, whose opinions in workmen's compensation cases are "peculiarly persuasive" with us, holds that the Industrial Board has the implied power, upon an application seasonably made, to vacate an award procured through fraud or mistake even after the lapse of the period for an application for review.[4] [*See Homan v. Belleville Lumber & Supply Co.*, 104 Ind. App. 96, 8 N.E.2d 127 (1937) ].[5]

\* \* \*

We agree with the reasoning of the Indiana court which strikes us as the more liberal view and the one more nearly in harmony with the purposes of the Workmen's Compensation Law of our State.

It seems to us that when the General Assembly established the Industrial Commission for the summary disposition of cases arising out of industrial accidents, it intended that that tribunal should have jurisdiction to do full and complete justice in each case. It granted to the Commission the power and authority not only to make and enforce

4. " 'The holding of the Indiana court is peculiarly persuasive with us because the Virginia act is based upon that of Indiana.' *Basham v. Lowe, Inc.*, 176 Va. 485, 494, 11 S.E.2d 638, 642, 131 A.L.R. 761, and cases there cited."

5. *See also Butts v. Montague Bros.*, 208 N.C. 186, 188, 179 S.E. 799, 801 (1935); *In re Crawford*, 205 S.C. 72, 30 S.E.2d 841, 850 (1944).

its awards, but protect itself and its awards from fraud, imposition and *mistake.*

It does not appeal to us as being either logical, reasonable, or within the spirit of the Act to say that the Commission has the jurisdiction and authority to hear summarily claims for compensation, to make awards thereon, to enforce them, and yet when it develops that an award has been procured through fraud or *mistake* the aggrieved party, in order to get relief, must resort to an independent suit in equity—with its possible problems of venue and jurisdiction of the parties, incidental expense, delays, and right of appeal—and then, if successful in that proceeding, he must return to the Commission for a hearing of his claim on the merits.

On the contrary, it seems far more consonant with the spirit and purposes of the Act to say that the General Assembly intended that the same tribunal which was empowered to hear in a summary manner claims for compensation, was likewise authorized and empowered to determine in a similar manner whether one of its awards should be vacated and set aside on the ground that it had been procured through fraud or *mistake.*

Accordingly, we hold that the Industrial Commission has the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through fraud or mistake.

*Id.* at 717–18, 720–21, 36 S.E.2d at 576, 577–78 (emphasis added) (citations omitted).

In the case before this Court, employer advances no claim of fraud or collusion. The parties simply made a substantial *mistake* in computing claimant's average weekly wage necessary to determine claimant's award. It is immaterial whether the mistake of fact is mutual or unilateral; *Harris* holds that the commission has the implied power to "do full and complete justice in *each* case," including the power to vacate awards entered by mistake.

 Nonetheless, the facts show that a mutual mistake of fact was made in this case. In determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is not, as the dissent suggests, who initially made the mistake, but rather, whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed. *See Seaboard Ice Co. v. Lee,* 199 Va. 243, 99 S.E.2d 721 (1957). In this case, each party went forward under the mistaken belief that the average weekly wage set forth in the agreement was correct, when, in fact, it was not. The mistake was mutual.

 Within the principles established by statutes and the Supreme Court decisions, the commission has " 'jurisdiction to do full and complete justice in each case.' " *Avon Prods., Inc.,* 14 Va.App. at 7, 415 S.E.2d at 228 (quoting *Harris,* 184 Va. at 720, 36 S.E.2d at 577). Justice is not attained by failing to correct obvious mistakes or declining to place the parties in positions which are in accord with the Act. Because the Act empowers the commission with "jurisdiction to do full and complete justice in each case," *Somers,* 228 Va. at 734, 324 S.E.2d at 697, we affirm the decision of the commission.

Accordingly, we affirm the commission's action vacating its prior order and directing recoupment of the benefits erroneously paid to claimant.

*Affirmed.*

BENTON, Judge, dissenting.

I agree with the commission's statement that it "clearly has authority to amend an average weekly wage which results from fraud, imposition or mutual mistake." I disagree with the majority's holding that "[i]t is immaterial whether the mistake of fact is classified as mutual or unilateral." In holding that the commission had implied authority to protect itself and its awards by setting aside an award based upon evidence of fraud, mistake, or imposition, the Supreme Court in *Harris v. Diamond Construction Co.,* 184 Va. 711, 720–21, 36 S.E.2d 573, 577 (1946), had no reason to elaborate upon the

type of mistake required to invoke that remedy. That decision turned upon an analysis of whether imposition existed. *See id.* at 722, 36 S.E.2d at 578. However, in several later cases, the Court has discussed the type of mistakes necessary to obtain relief.

Specifically referring to its decision in *Harris,* the Supreme Court stated as follows:

> The decision in *Harris v. Diamond Const. Co.,* . . . is a holding to the effect that the Industrial Commission is clothed with the same power to annul and vacate an award formerly entered that a court of equity has to annul and vacate a judgment or to annul and cancel a deed when the attack is based on fraud, imposition or mistake. The rules of pleading in the two forums are different but are appropriate to the historical background of each. The dominant purpose of all pleading is to inform the other parties to the cause of the precise nature of the charge in order that they may prepare and present their defense. However, when questions of fraud or mistake are involved in either forum, the burden of proof and the character of evidence required to establish the charge should be, and are, the same in each forum, except that hearsay testimony may be admitted and considered by the Industrial Commission.

*Ashby v. Red Jacket Coal Corp.,* 185 Va. 202, 206–07, 38 S.E.2d 436, 438 (1946). Any doubt that this rule requires the mistake be a mutual mistake of fact is dispelled by *J & D Masonry v. Kornegay,* 224 Va. 292, 295 S.E.2d 887 (1982). The Court ruled in that case as follows:

> In the exercise of its power to set aside a final award upon the ground of fraud or mistake, the Commission applies the same rules applicable to a proceeding in equity to annul a final judgment at law. In order to prevail, the moving party must prove the allegations upon which he seeks relief by positive and direct evidence which is clear and convincing.

The central question here is whether the Commission erred in finding that the carrier failed to carry the requisite

burden and to prove fraud or *mutual mistake of fact.* We think the Commission was correct.

At the most, the evidence proves merely a unilateral mistake of fact by the carrier unaccompanied by any fraud attributable to the claimant. Under such circumstances, relief will not be granted.

*Id.* at 295, 295 S.E.2d at 889 (emphasis added) (citations omitted). *See also Foreman v. Clement,* 139 Va. 70, 80–81, 123 S.E. 336, 339 (1924)(in the absence of fraud, to obtain relief in equity the evidence must establish that the mistake of fact was mutual); *Hartford Fire Ins. Co. v. Tucker,* 3 Va.App. 116, 121, 348 S.E.2d 416, 419 (1986)(citing *Harris* for the proposition that a mutual mistake of fact is required to vacate an award). Thus, the commission correctly determined that its power to amend the award for mistake required a showing of a mutual mistake of fact.

As stated in the majority opinion, the material facts in this case are not in dispute. However, this appeal comes to this Court for review of the commission's finding that a mutual mistake occurred. That finding is not supported by the record. Indeed, the employer does not argue on this appeal that the facts support the commission's finding of a mutual mistake. The employer asserts on brief that "the focus [of this appeal] is more appropriately directed to the imposition involved as noted by the deputy commissioner" and that "the analysis should center on the actual imposition." In view of the employer's tacit concession and the undisputed material facts, an exhaustive analysis is not necessary to demonstrate that the evidence failed to establish that a mutual mistake of fact occurred.

The record establishes that the employer's insurance adjuster requested that Collins provide his pay stubs and made the calculation without relying on any representation by Collins. The adjuster admitted that her miscalculation formed the basis of the award. She testified as follows:

I asked [Collins] if he saved his pay stubs, and requested copies of such. In order to issue payment for Mr. Collins, I

then took the hours from each of the 8 weeks and averaged them to get a basis from which to issue his checks. In order to provide Mr. Collins with money as quickly as possible, I determined his average weekly wage to be $534.24, with a compensation rate of $356.17.... In hindsight, I realize that I should not have turned in that original Memorandum of Agreement as the compensation rate was based on incomplete information.

The facts do not prove, and the employer does not allege, that Collins committed fraud. In computing Collins' average weekly wage, the adjuster did not use the employer's data and made a unilateral mistake.

The principle is well established that whenever " 'there is mistake on the part of [only] one party' ... the mistake is unilateral." *Ward v. Ward,* 239 Va. 1, 5, 387 S.E.2d 460, 462 (1990) (citation omitted). The record is clear that the mistake was made by the employer's adjuster, not by Collins. Thus, the mistake was unilateral. *Id. See also Fox–Sadler Co. v. Earl E. Norris Roofing Co.,* 229 Va. 106, 110, 327 S.E.2d 95, 97 (1985). Collins did nothing to aid or induce that mistake. "This is simply a case of inadequate, incomplete, and deficient investigation by the carrier." *Kornegay,* 224 Va. at 296, 295 S.E.2d at 889.

A mutual mistake is one that is common to both parties to a transaction. *Seaboard Ice Co. v. Lee,* 199 Va. 243, 252, 99 S.E.2d 721, 727 (1957). "A mistake by one party coupled with ignorance thereof by the other party does not constitute a mutual mistake." 76 C.J.S. *Reformation of Instruments* § 29, at 382 (1994). Because the record does not prove a mutual mistake of fact, I would reverse the commission's decision.

The commission failed to address the deputy commissioner's ruling "that the significant difference between the average weekly wage reflected on the Memorandum of Agreement and the actual weekly wage constitutes imposition." However, the evidence does not prove that Collins' actions caused an imposition upon the employer or the commission. Although our equity case law has long addressed the concept of "imposi-

tion," *see, e.g., Fitzgerald v. Frankel,* 109 Va. 603, 610, 64 S.E. 941, 943–44 (1909), the Virginia cases do not explicitly define this term. The dictionary defines "imposition" as "an excessive, unwarranted, or uncalled-for requirement or burden." *Webster's Third New International Dictionary* 1136 (1981). *Accord Frankini v. Bank of America Nat. Trust & Savings Ass'n,* 31 Cal.App.2d 666, 88 P.2d 790, 795 (1939).

The Supreme Court acknowledged the lack of an explicit definition when it observed as follows:

> Heretofore, we have said very little about the meaning of the word "imposition" as a basis for setting aside or amending an award or agreement. Nevertheless, in *Harris* we acknowledged the existence of this concept. In considering the meaning of "imposition," we must do so against the backdrop of *Harris,* where the term was used, and where we also stated that the Act grants the Commission "jurisdiction to do full and complete justice in each case."

*John Driggs Co. v. Somers,* 228 Va. 729, 734, 324 S.E.2d 694, 697 (1985) (citation omitted). Without giving the term a definition, the *Somers* Court held that impositions occurred under the following particular facts:

> In our view, the carrier's deviation from the requirements of Code § 65.1–6 worked an imposition upon Somers. The carrier, which works frequently with claims under the Act, undoubtedly had knowledge of the Act superior to that possessed by Somers. At the time the agreement was handed to him, Somers was injured, out of work, and receiving no compensation. The agreement presented him with an apparently simple means of getting a flow of money at a time he needed it. The carrier had the upper hand. It had superior knowledge, and it had the power either to turn over money immediately to an injured man or to "fight" with him about the proper amount and thereby delay the first compensation check. The carrier did not tell Somers how the average weekly wage figure was to be computed nor did it consult with him about the possible methods of calculation. Finally, of the several possible methods of

calculation, the carrier settled upon one which resulted in a lower compensation award to Somers than he would have received had other methods been used. Under these facts, we conclude that the carrier's conduct constituted an imposition upon the claimant.

Moreover, we also conclude that the carrier's failure to abide by Code § 65.1-6 constituted an imposition upon the Commission. The Workers' Compensation Act is in the nature of a compromise between employers and employees; each surrenders certain rights to gain certain rights. An essential element of this compromise is the employer's obligation to pay for compensable injuries at a rate contemplated by the Act. When the average weekly wage embodied in a memorandum of agreement substantially deviates from the statutory guidelines, the balance struck by the Act's compromises is disrupted. The Commission has the power and authority to right this imbalance and thereby protect itself and its award from such imposition.

*Id.* at 734–35, 324 S.E.2d at 697–98 (citations omitted).

Although the deputy commissioner found that an imposition occurred in this case, the commission did not affirm that finding. Instead, it found, erroneously, that a mutual mistake of fact occurred. In light of the Court's discussion of imposition in *Somers*, the adjuster's unilateral mistake does not constitute an imposition. The mistake did not harm Collins or the commission; it worked a detriment only upon the entity that made the mistake—the insurer.

Moreover, even if this unilateral mistake is deemed to be an imposition on the commission, the commission's implied power to set aside an award does not necessarily include the power to order the recoupment of any overpayment by the employer. The Court in *Somers* held that the commission had the power to amend the award; however, nothing in *Somers* suggests that the employer has the right to recoup overpayments. Likewise, the holding in *Harris* does not suggest that the

commission has the power to award a recoupment. Indeed, several statutes suggest that the power to order recoupment must be specifically granted. *See, e.g.,* Code §§ 65.2–712 and 65.2–1105.[6]

Under the Act, an employer's obligation to pay compensation benefits may be suspended or terminated by the commission upon a proper application. *See, e.g.,* Code § 65.2–708. However, unless otherwise provided by statute, the employer's relief is prospective only. *See Specialty Auto Body v. Cook,* 14 Va.App. 327, 416 S.E.2d 233 (1992).

For these reasons, I would reverse the commission's award.

---

**6.** Code § 65.2–712 provides: "So long as an employee receives payment of compensation under this title, such employee shall have a duty immediately to disclose to the employer, when the employer is self-insured, or insurer in all other cases, any incarceration, return to employment or increase in his earnings. Any payment to a claimant by an employer or insurer which is later determined by the Commission to have been procured by the employee by fraud, misrepresentation, or failure to report any incarceration, return to employment or increase in earnings may be recovered from the claimant by the employer or insurer either by way of credit against future compensation payments due the claimant, or by action at law against the claimant."

Code § 65.2–1105 provides: "Any payment to the employer or carrier pursuant to this chapter which is later determined by the Commission to have been procured through fraud, mistake or the improper processing of the claim by the carrier shall be recovered from the employer or carrier and credited to the Second Injury Fund. Any subrogation recoveries or other recoveries from a third party or other source shall be shared by the employer or carrier and the Second Injury Fund on a pro rata basis after deducting all reasonable expenses in obtaining the recovery."