## CIRCUIT COURT OF FAIRFAX COUNTY

David Kiszely

v.

Joseph Yi

April 11, 2006

Case No. (Chancery) 2005-2697

BY JUDGE KATHLEEN H. MACKAY

This case came before the Court for trial on March 7, 2006. At the close of the trial, the parties were directed to submit written closing statements to the Court for review and the matter was placed on the Court's March 31, 2006, docket. At the March 31, 2006, hearing the matter was taken under advisement. Since the hearing date, I have had the opportunity to again review the arguments and closing statements submitted by counsel, and I am now prepared to rule.

*Facts*

Mr. Kiszely was suffering from severe financial setbacks in the summer of 2004 and was at risk of losing his home. At that time, he met Mr. Yi, a real estate investor interested in helping him avoid foreclosure. After several rounds of negotiations, most often through e-mail, the parties entered into an agreement of sorts. This agreement is memorialized in the November 18, 2004, e-mail exchange between the two parties.

The November 18, 2004, agreement included the following terms:
1. The parties were to sign a purchase agreement for $650,000.

2. Plaintiff would deed the house to the Defendant.

3. Defendant would take over the Plaintiff's bank loan and liens on record as of the date of the last title search. The agreement required the Defendant to pay all liens on record as of the last title search. Presumably this would include the $62,000 in judgment liens from prior debts owed by the Plaintiff. If the Defendant has not paid this, it appears he promised to do so.

4. Defendant was to give Plaintiff up to $50,000 immediately and a note in the amount of $90,000 for one year.

5. If Plaintiff was to manage the construction of the property, he was to do so for less than $200,000. Any costs over $200,000 were to be paid by the Plaintiff.

6. After six months, Plaintiff had the option to buy back the home for $540,000 plus the assumption of the bank loans and liens.

7. If Plaintiff did not purchase the home, Defendant had the right to sell the home. However, Plaintiff could remain in the home for one year if he could pay the $5,000 per month in rent.

8. If Defendant sold the home, Plaintiff would recover an additional $60,000 if the home sold for more than $1.3 million, was fixed for less than $200,000, and was completed in less than six months.

Mr. Kiszely was able to avoid foreclosure by entering into the agreement with Mr. Yi. Both sides followed through on November 18-19, 2004. Performance in the form of the payment of arrears and the execution of the quit claim deed consummated the deal last expressed in the November 18, 2004, e-mail from Yi to Kiszely. See p. 15 of Plaintiff's Exhibit # 1. However, a purchase agreement was never signed by the parties. Mr. Yi continued to cover the cost of the mortgage payments at $5,000 per month from December 2004 through November 2005. Mr. Yi did not forward the $50,000 or the $90,000 promissory note to Mr. Kiszely.

Unfortunately, the agreement between the parties began to deteriorate. Mr. Yi presented several options to repurchase the home, none of which were attractive to Mr. Kiszely. In addition, the parties disagreed on the best approach to take regarding the home, i.e. to repair versus rebuild. These disagreements came to a head when the Defendant filed a motion for possession of the home with the General District Court in June 2005. Plaintiff then filed this action alleging fraud in the execution of the quitclaim deed.

*Legal Analysis*

The parties each presented different theories as to how this "agreement" between them should be viewed. These theories will each be addressed in turn.

## A. *Fraud*

In his closing statement, Plaintiff Kiszely argues that the November 18, 2004, agreement should be voided because it was obtained through fraud. In the alternative, he asks that the quitclaim deed be voided because it too was obtained through fraud.

To prove fraud, the Plaintiff must allege and demonstrate (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with the intent to mislead; (5) reliance by the party misled; and (6) resulting in damages to the misled party. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 557 (1998). It is my opinion that the Plaintiff did not present evidence at trial sufficient to support a finding of fraud with respect to either the November 18, 2004, agreement or the quitclaim deed.

## B. *Mutual Mistake*

A second theory presented by the Plaintiff is that of mutual mistake. In his closing statement, Plaintiff argues that, if the court finds a mutual mistake between the parties regarding the terms of the agreement, the quitclaim deed should be voided and monies returned to the Defendant.

In general, where a mutual mistake is made by both parties in a matter which is the cause or subject of the contract, and no fraud is imputable to either party, the mistake is good ground in equity for rescinding the agreement, even after it has been fully executed. *Seaboard Ice Co. v. Lee*, 199 Va. 243, 252 (1957). However, application of this doctrine is reserved for those instances when there is mutual mistake as to the "essence" or "substance" of the contract. 13A Michie's Jurisprudence, *Mistake and Accident*, § 3; *Torrez v. Comacho*, 66 Va. Cir. 161, 165 (Fairfax County 2004).

Further, to warrant the extraordinary remedy of rescission, the alleged mistake must be mutual and participated in by both parties, unless the mistake

was induced by the fraud or inequitable conduct of the other party. *Foreman v. Clement*, 139 Va. 70, 81 (1924).

In this case, the Plaintiff alleges that there was a mutual mistake as to whether the quitclaim deed was to be recorded by the Defendant. Plaintiff states he executed the quitclaim deed "on his belief that Defendant intended to merely hold a quitclaim deed to the property at 704 Kentland Drive, Great Falls, Virginia, in Fairfax County, as his security for performance on the agreement." Plaintiff's Closing Statement p. 2. In his defense against a claim of fraud, the Defendant states "Mr. Kiszely's professed reliance upon Mr. Yi's not recording the quitclaim deed is not reasonable reliance. . . . Mr. Kiszely accepted $115,000 from Mr. Yi, knowing that Mr. Yi held no other document or written contract to protect his position, except unsigned e-mails." Defendant's Closing Statement p. 3.

In reading the statements of each party and from the testimony heard at trial, it appears that the recording of the quitclaim deed was not a mutual mistake. A mere difference of opinion is not a mutual mistake. *Foreman* at 81. The terms of the agreement are clear and state "you [Plaintiff] deed the house to me [Defendant]." The agreement is silent as to recordation. Here, Defendant promptly recorded the deed upon receipt. Plaintiff's mistaken belief that Defendant would not record the deed appears to be one-sided.

Finally, in limited circumstances, there is a more modern rule regarding mistakes made by only one party. A mistaken party may void a contract if (1) the mistake involved a "basic assumption" regarding the contract; (2) the mistaken assumption had a materially adverse effect on him; and (3) the other party had reason to know of the mistake. *S & J Assocs. v. Jay's Trucking Co.*, 26 Bankr. 73, 76 (Bankr. E.D. Va. 1982). Plaintiff, however, has not alleged or proven facts sufficient to support this finding. It is unclear that the "agreement" between the parties has had a "materially adverse" effect on him. In fact, but for the agreement, Plaintiff would have lost his home to foreclosure several years ago. In addition, it has not been alleged or proven that Mr. Yi knew of Mr. Kiszely's mistaken belief that the quitclaim deed would not be recorded.

Therefore, for the reasons stated above, it does not appear to the Court that either the agreement or the quitclaim deed should be voided for mutuality of mistakes.

C. *Breach of Contract*

Defendant Yi argues that the evidence most strongly presents a breach of contract analysis. A breach of contract claim must demonstrate (1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff. *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543 (1989). However, where the conduct of both parties amounts to mutual breaches of a contract, combined with strict waivers of performance, neither party has a claim against the other. *Vecco Constr. Indus., Inc. v. Century Constr. Co.*, 30 Bankr. 945, 953 (Bankr. E.D. Va. 1983).

From the evidence presented at trial, it appears that both parties breached the agreement, as it is undisputed that neither party entered into a purchase agreement for the sale of the house. However, it is also undisputed that Mr. Yi did not provide Mr. Kiszely with the $50,000 and $90,000 promissory note described in paragraph 1 of the agreement. *See* Defendant's Closing Statement p. 1. The party who commits the first breach is not entitled to enforce the contract. *Countryside Orthopedics v. Peyton*, 261 Va. 142, 154 (2001); *Shen Valley Masonry, Inc. v. S. P. Cahill & Assocs., Inc.*, 57 Va. Cir. 189, 198 (City of Charlottesville 2001). Failure to pay the $50,000 cash and $90,000 note amounts to a new, unwaiveable breach by Mr. Yi for which Mr. Kiszely is entitled to receive damages.

However, it is important to note that Mr. Yi is not liable to Mr. Kiszely for any of the $200,000 allocated for reconstruction of the property. No evidence was presented at trial, or in closing statements, to support the contention that Mr. Kiszely has expended reimbursable funds toward rebuilding the home.

D. *Partnership*

Alternatively, Mr. Yi asks that, if the home can be sold, any damages owed between the parties be analyzed as if they were engaged in a partnership. Virginia has adopted the Revised Uniform Partnership Act ("R.U.P.A."), which defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Va. Code § 50.73-79. A partnership is formed as soon as two people associate in the manner described above, regardless of whether they intended to form a partnership. Va. Code § 50.73-88(A). However, to "carry on" a business means to conduct a business for a sustained period of time for the purposes of livelihood or profit. The carrying

on of a single transaction is not sufficient to create a partnership. *Walker v. Burgess*, 153 Va. 779, 787 (1930) (analyzing the definition of "partnership" under previous code § 4359, which matches the current definition under Va. Code § 50.73-79 verbatim).

In *Walker*, a corporation agreed to purchase three lots of land and furnish the capital to erect homes upon it. *Id*. An individual agreed to furnish the materials and labor to erect the homes. *Id*. Both parties to the contract agreed that the homes would then be sold by either party and the net profits would be divided among them in proportion to their costs. *Id*. The Supreme Court of Virginia concluded that this agreement did not create a partnership because did not contemplate "carrying on a business for profit," but merely contemplated a single act. *Id*.

This same analysis may be applied to the case at hand. Mr. Kiszely and Mr. Yi have entered into an agreement regarding a single transaction, the sale, refurbishing, and possible resale of the home at 704 Kentland Drive, Great Falls, Virginia. The agreement does not extend beyond this individual deal, *i.e.* it does not contemplate future endeavors or the purchase of additional real estate. Thus, because the agreement between the parties is merely a single transaction, rather than the "carrying on" of a business for profit, it does not rise to the definition of a partnership arrangement.

## Conclusion

Having reviewed the various theories presented by the parties, I conclude that this case essentially lies as a breach of contract. This conclusion has the following implications.

First, as stated above, both parties admit they never entered into a written purchase agreement as required by the terms of their contract. Evidence of the contract is in the November 18, 2004, e-mail and the actual performance of the parties. Mr. Yi also admits that he did not comply with the terms of the agreement by failing to pay Mr. Kiszely $50,000 and a $90,000 promissory note. Therefore, Mr. Kiszely is entitled to compensatory damages equaling $140,000.

Second, consequently, because there has been no finding of fraud or mutual mistake, Plaintiff's requested relief to rescind the contract and/or the quitclaim deed must fail. Therefore, ownership of the home remains with Mr. Yi.

However, as a court sitting in equity, I have the ability to fashion a remedy which helps make both parties to this case whole. Therefore, in

370

addition to the conclusions stated above, I also make the following determinations.

First, Mr. Kiszely should be granted the opportunity to repurchase the home. He shall have ninety days from entry of the order of this court within which to secure sufficient financing for this purchase.

Second, Mr. Yi is entitled to rent from Mr. Kiszely for the months he has remained in the home without making any payments, namely December 2004 to November 2005. Evidence of a reasonable rental amount was not clearly presented at trial; however, it is uncontested that Defendant pays approximately $5,000 per month to cover the cost of the mortgage and interest. Defendant's Answer ¶ 84; Plaintiff's Closing Statement p. 3. Defendant seeks $4,000 in monthly rent, which seems reasonable in light of his monthly payments. Defendant's Closing Statement p. 5.

Third, Mr. Yi is entitled to a reasonable rate of return on his investment. Although neither party presented evidence as to what a reasonable return would be, Mr. Yi does provide a calculation of his expected profit based upon the sale of the house at $1.2 million. Under that scenario, Mr. Yi's expected profit would be $466,000. Mr. Yi should also receive back the cost of his initial investment, equal to $115,000.

Therefore, the repurchase price should be $429,000. This amount is reached by the following calculations:

| | |
|---|---|
| Mr. Yi's Initial investment | $115,000 |
| Rental Payments (x 12) | + $48,000 |
| Reasonable Expected Return | + $466,000 |
| Amount of Breach | - $140,000 |
| Contractual Profit for Mr. Kiszely | - $60,000 |
| | $429,000 |

If the $62,000 in judgment liens was on record at the time of the agreement, then Mr. Yi is obliged to make good on his agreement to pay this amount off, and the repurchase price would be adjusted downward accordingly.

If, within ninety days, Mr. Kiszely is unable to repurchase the home at the stated price, Mr. Yi is still bound by his obligation to repay Mr. Kiszely $140,000 due to his breach. At that time Mr. Yi would then also become eligible to "purchase" clear title to the home by paying a total of $200,000 in damages to Mr. Kiszely. This $200,000 includes the $140,000 owed for breach and the $60,000 contractually due to Mr. Kiszely under the parties' agreement.