COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Overton and Senior Judge Duff
Argued by Teleconference


CORPORATION OF THE PRESIDENT
 NANE FREDERICKSBURG, VA and
 LUMBERMENS MUTUAL CASUALTY COMPANY
                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2936-96-4         JUDGE JOHANNA L. FITZPATRICK
                                             JUNE 10, 1997
BONNIE C. GASKINS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION


        Lynne Jones Blain (Michelle P. Wiltshire;
        Morris & Morris, on brief), for appellants.

        Diane C.H. McNamara for appellee.



     On appeal from a decision of the Workers' Compensation

Commission, Corporation of the President Nane Fredericksburg, VA

and Lumbermens Mutual Casualty Company (collectively referred to

as "employer") contend that the commission erred in allowing the

amendment of the claimant's average weekly wage as previously

awarded.  For the following reasons, we affirm the commission's

decision.

BACKGROUND

     On August 30, 1993, Bonnie C. Gaskins (claimant) suffered a

compensable closed head injury, cervical injury, and brain

damage.  At the time of her injury, she was working as a

custodian for the Church of Jesus Christ of L.D.S. (Church).

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Also during this time period, claimant was employed as a custodian by 1st Choice Commercial Cleaning, Inc. (1st Choice). She returned to work at Church on September 11, 1993 but did not resume working for 1st Choice.

On January 24, 1994, claimant signed a memorandum of agreement that awarded her temporary partial benefits based only upon her wages from her employment with Church. Shortly thereafter, on January 25, 1994, claimant sent a letter to employer "indicating that because of her head injury she was incapable of signing the forms or understanding the financial information." Claimant contacted employer "[a]nd explained the two jobs and [employer] said that the paperwork was incorrect. And [claimant] followed up with a phone call and [employer] said that she would discuss with [the case manager] the paperwork being incorrect." No one from the employer responded to claimant's inquiries.

At the hearing before the deputy commissioner, claimant explained that when she signed the agreement she "didn't understand what I was signing. And I had contacted the people at Workmans' Comp and explained to them that I did not understand it and I followed up with a letter." Claimant further testified that she "knew as [she] got these benefits, each and every week, that they did not include monies paid by 1st Choice Commercial Cleaning . . ." and that as of January 1994, she "knew that the paperwork was incorrect."

The commission approved the memorandum on January 31, 1995. On January 4, 1996, claimant filed an application for a hearing to amend the memorandum to include her earnings from 1st Choice in the calculation of her average weekly wage. It is undisputed that her work for 1st Choice was similar employment and should have been factored into the original payments. A hearing regarding claimant's application was held on May 3, 1996.

Following the hearing, the deputy commissioner determined that, despite her injury, claimant's request to amend was not timely under the circumstances of the case. The deputy commissioner relied on the facts that claimant knew the figure was wrong as early as January 1994, that she did not sign the memorandum for a year after receiving it, that she was represented by counsel, and that employer placed no undue pressure on her to sign the memorandum. The deputy commissioner found no mutual mistake, fraud, or imposition, and denied claimant's application to amend.

The full commission reversed and allowed the amendment. The commission determined that:

> [I]n this case there was a mutual mistake. Because of her closed head injury, the claimant has suffered serious cognitive deficits and depression. She credibly testified that she advised the carrier that she was working two jobs, and yet the carrier neglected to follow up on this information. We do not find that the fact that the claimant had a lawyer when she filed the Memorandum in and of itself renders her application untimely.

AMENDMENT OF CLAIMANT'S WEEKLY WAGE

3

Employer contends that the commission erred in deciding that the evidence supported a finding of mutual mistake regarding claimant's average weekly wage and in allowing amendment of the award. Additionally, employer argues in the alternative that this is not a case where the doctrine of imposition should apply, because employer did not "run afoul" of any statutory requirements and it continued to pay claimant benefits in accordance with the memoranda of agreement. We agree that the doctrine of mutual mistake does not apply in the instant case.[1] However, we find that credible evidence in the record supports application of the doctrine of imposition.

Findings of fact by the commission are conclusive and binding on appeal if supported by credible evidence, even though contrary evidence may exist in the record. Russell Loungewear v. Gray, 2 Va. App. 90, 341 S.E.2d 824 (1986). When reviewing the

_____

[1]What constitutes a mutual mistake to qualify for rescission of a contract is a mistake that is "common to both parties to a transaction," consisting "either in the expression of their agreement, or in some matter inducing or influencing the agreement, or in some matter to which the agreement is to be applied." Seaboard Ice Company v. Lee, 199 Va. 243, 252, 99 S.E.2d 721, 727 (1957). "In determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is . . . whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed." Collins v. Dept. of Alcoholic Bev. Con., 21 Va. App. 671, 681, 467 S.E.2d 279, 283 (1996), aff'd, 22 Va. App. 625, 472 S.E.2d 287 (1996).
In the instant case, there was no mutual mistake. Claimant testified that she knew the memorandum was "incorrect" when she signed it, and that she knew that the average weekly wage reflected only those earnings from her job at Church.

4

factual findings of the commission on appeal, we "review the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

"[T]he concept known as 'imposition' . . . empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown." Odom v. Red Lobster #235, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)).

> The doctrine focuses on an employer's or the commission's use of superior knowledge of or experience with the Workers' Compensation Act or use of economic leverage, which results in an unjust deprivation to the employee of benefits warranted under the Act . . . . Thus, this Court has found that the doctrine applies where, inter alia, the record shows a series of acts by the employer or the commission upon which a claimant naturally and reasonably relies to his or her detriment.

Butler v. City of Virginia Beach, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996) (citations omitted) (holding that doctrine does not apply if the imposition resulted from claimant's own act).

The commission's finding that claimant's request to amend the average weekly wage was timely is a finding of fact that is conclusive and binding on appeal because it is supported by credible evidence. See Loungewear, 2 Va. App. at 92, 341 S.E.2d

5

at 825. The evidence shows that as early as January 1994, claimant notified employer that she had been working a second job of similar employment. It is undisputed that employer failed to respond to claimant's notification. Additionally, claimant testified that during this time, her ability to function was significantly impaired by her closed head injury. Medical records confirm that claimant suffered from serious cognitive deficits and depression that hindered her decision-making abilities.

Moreover, this evidence also supports the application of the doctrine of imposition. Although claimant notified employer of her second job consisting of the same or similar employment, employer failed to follow up on this information and to correct the agreements to reflect these additional earnings. Employer admits that these earnings would have been included if requested initially. Employer's superior knowledge in the handling of claims and its knowing failure to correct the error constitutes an imposition on claimant. This doctrine is particularly applicable in the instant case, because claimant suffered from an injury that impaired her cognitive and decision-making abilities.

Accordingly, we hold that the commission correctly amended the determination of claimant's wage. Although the commission erred in applying the doctrine of mutual mistake, we apply the doctrine of imposition and arrive at the same result. See Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312,

6

313 (1992) ("an appellate court may affirm the judgment of [the commission] when it has reached the right result for the wrong reason").  The decision of the commission is therefore affirmed.

Affirmed.