COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Senior Judge Hodges
Argued at Richmond, Virginia


LAWRENCE E. McFADDEN

                                                        OPINION BY
v.        Record No. 1614-03-2              JUDGE LARRY G. ELDER
                                                     JANUARY 20, 2004
THE CARPET HOUSE AND
 VIRGINIA COMMERCE GROUP
 SELF-INSURANCE ASSOCIATION


              FROM THE VIRGINIA WORKERS' COMPENSATION COMISSION

          Leila H. Kilgore (Benjamin M. Smith, Jr.; Kilgore & Smith, on
          brief), for appellant.

          Kathryn Spruill Lingle (Theisen & Lingle, P.C., on brief), for
          appellees.


        Lawrence E. McFadden (claimant) appeals a decision of the Workers' Compensation

Commission holding that the Carpet House and the Virginia Commerce Group Self-Insurance

Association (employer) were entitled to a credit for temporary total disability payments they

made to claimant pursuant to an outstanding award after he returned to his pre-injury

employment.  On appeal, claimant contends employer's payments were not voluntary payments

within the meaning of Code § 65.2-520 and, thus, that employer was not entitled to credit.  We

hold the express provisions of Code §§ 65.2-708 and -712 governing the termination of an award

based on a change in condition control and that the commission erred in construing Code

§ 65.2-520 to allow the requested credit.  Thus, we vacate the commission's order granting the

requested credit and remand for further proceedings consistent with this opinion.

I.

BACKGROUND

On August 2, 2000, claimant sustained a compensable injury to his right knee while working for employer. By order entered October 26, 2000, he was awarded temporary total disability benefits of $606 per week from August 9, 2000, and continuing. Claimant returned to light-duty work for employer on December 6, 2000, at a wage lower than his pre-injury wage. The commission entered an award for temporary partial disability benefits of $606 per week from that date and continuing.[1]

Claimant was released for full-duty work for employer on December 21, 2000, and received his full pre-injury wage.[2] However, employer continued to pay him temporary partial disability benefits of $606 per week through September 13, 2001.

On September 13, 2001, employer filed an application for a hearing seeking to terminate the outstanding award based on claimant's release to return to pre-injury employment on December 21, 2000. Employer also sought a credit for the overpayment of compensation benefits from December 21, 2000, through September 13, 2001.

The parties resolved the termination question by executing and submitting to the commission a Termination of Wage Loss Award form confirming claimant's December 21, 2000 return to pre-injury employment. Employer's request for credit for the overpayment remained unresolved. The commission did not refer it to the hearing docket because employer failed to submit documentation to support its request for credit.

---

[1] $606 per week was the maximum weekly compensation benefit to which claimant was entitled under the Act. Claimant's pre-injury average weekly wage was $1,412.37. Code § 65.2-500 limits a claimant's benefits by the average weekly wage of the Commonwealth, as defined therein, a figure calculated annually.

[2] It appears claimant subsequently left employer's employ, but no issues related to that departure are involved in this appeal.

On January 10, 2002, employer filed an application again seeking credit for the overpayments. However, employer withdrew that application, which was dismissed by order of February 19, 2002.

On August 14, 2002, employer filed an application alleging claimant returned to work for employer on December 4, 2000, and was released to return to his pre-injury work on December 21, 2000, but was paid through September 13, 2001. Employer again sought credit for the approximately $23,000 in overpayments made between claimant's return to pre-injury work on December 22, 2000, and September 13, 2001, the date on which employer terminated payments.

At a hearing before the deputy commissioner on October 3, 2002, the parties stipulated that appellant returned to work for employer on December 3, 2000 and that appellant's physician released him to "full duty work" as of December 21, 2000. They agreed that both the Carpet House and "the carrier, Comp Management," were aware of claimant's return to work in December 2000, that the Carpet House "did produce the wage information to Comp Management," and that employer/carrier continued claimant's temporary partial disability payments in error. The parties framed the issue as whether employer was entitled to a credit for the overpayment. Claimant's defense was that both the employer and the insurer knew of his return to work.

By opinion of October 9, 2002, the deputy commissioner awarded employer the requested credit. The deputy concluded that a voluntary payment for which an employer is entitled to credit under Code § 65.2-520 is "any type of payment not required under the Act," including "an overpayment as a result of a mistake by the employer." The deputy held that granting employer the requested credit was proper because denying a credit would unjustly enrich the claimant.

Claimant requested review by the commission. The commission unanimously concluded the payments were voluntary payments for which employer was entitled to credit.

Claimant noted his appeal to this Court.

II.

ANALYSIS

Claimant contends the commission erroneously awarded employer credit for temporary disability compensation it paid pursuant to an outstanding award for the period after claimant returned to work for employer and before employer filed an application for a change in condition to terminate the award. We hold the commission's award of credit under Code § 65.2-520 was error, and we vacate the award.

Code § 65.2-520 provides as follows:

> Any payments made by the employer to the injured employee during the period of his disability, . . . *which by the terms of this title were not due and payable when made*, may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation provided that, in the case of disability, such deductions shall be made by reducing the amount of the weekly payment in an amount not to exceed one-fourth of the amount of the weekly payment for as long as is necessary for the employer to recover his *voluntary payment*.

Code § 65.2-520 (emphases added).[3] In order to determine whether payments made by an employer pursuant to an outstanding award after it receives notice that an employee has returned to work may ever constitute voluntary payments under Code § 65.2-520, we examine the

---

[3] Both employer and the commission rely on the decision of <u>Dodson v. Newport News Shipbuilding & Dry Dock Co.</u>, No. 0278-99-1, 1999 WL 1133301 (Va. Ct. App. Aug. 10, 1999), in which a panel of this Court interpreted the term "voluntary payments" as used in Code § 65.2-520. <u>Dodson</u>, a memorandum decision, lacks precedential value in this Court, <u>see, e.g.</u>, <u>Fairfax County Sch. Bd. v. Rose</u>, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999) (*en banc*), and in any event is factually distinguishable, <u>see</u> <u>Dodson</u>, 1999 WL at **1-2 (decided in the context of an employer's request for credit for payments made pursuant to federal workers' compensation statute).

mechanism by which an employer seeks to terminate temporary disability payments due under an outstanding award.

Code § 65.2-708 provides that where an employer seeks to terminate or modify an outstanding award based on a change in the claimant's condition, "[n]o such review shall affect such award as regards any moneys paid except pursuant to [§] 65.2-712 . . . ."[4] Under Code § 65.2-712, an employer shall not be entitled to credit for sums already paid except where a claimant has committed fraud or misrepresentation or has failed to meet his duty to report a return to work or change in earnings.[5] See Collins v. Dep't of Alcoholic Beverage Control, 21 Va. App. 671, 676-77, 467 S.E.2d 279, 281-82 (citing Bristol Door & Lumber Co. v. Hinkle, 157 Va. 474, 161 S.E. 902 (1932)), aff'd on reh'g en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996).

---

[4] Code § 65.2-708(A) provides more fully as follows:

> Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the award. . . . No such review shall affect such award as regards any moneys paid except pursuant to [§] 65.2-712 . . . .

[5] Code § 65.2-712 provides more fully as follows:

> So long as an employee . . . receives payment of compensation under this title, any such person shall have a duty immediately to disclose to the employer, when the employer is self-insured, or insurer in all other cases, any . . . return to employment [or] increase in his earnings . . . . Any payment to a claimant by an employer or insurer which is later determined by the Commission to have been procured by the employee . . . by fraud, misrepresentation, or failure to report any . . . return to employment [or] increase in earnings, . . . may be recovered from the claimant . . . by the employer or insurer either by way of credit against future compensation payments due the claimant . . . or by action at law against the claimant . . . .

Here, employer conceded that both the Carpet House and the Virginia Commerce Group Self-Insurance Association had timely notice of claimant's return to work at his pre-injury wage. See Wash. Metro. Area Transit Auth. v. Rogers, 17 Va. App. 657, 440 S.E.2d 142 (1994) (in case of self-insured employer, holding claimant's return to work for same employer constituted notice of return to employment required by Code § 65.2-712). Whether employer or carrier had notice is not in issue.

We discussed the interplay between Code §§ 65.2-708 and 65.2-712 on the one hand and Code § 65.2-520 on the other in Collins. Collins involved an incorrect calculation of the claimant's average weekly wage, upon which an award was entered. 21 Va. App. at 673, 467 S.E.2d at 280. We expressly held in Collins that temporary disability payments made pursuant to an award based on a memorandum of agreement were not "voluntary payments" within the meaning of Code § 65.2-520. Id. at 675-76, 467 S.E.2d at 281; see also Dep't of Corr. v. Brown, 259 Va. 697, 706, 529 S.E.2d 96, 101 (2000) (noting principle of statutory construction that where general and specific statutes conflict, "the more specific statute prevails"). Nevertheless, we acknowledged an exception to the statutory rule that an award may be altered only prospectively. Collins, 21 Va. App. at 678-81, 467 S.E.2d at 282-84. We upheld the commission's application of the doctrine of imposition to amend the award to reflect the corrected average weekly wage based on mutual mistake and its award to employer of a credit for the resulting overpayment. Id.

We again upheld the commission's exercise of its equitable powers in the more recent case of Lam v. Kawneer Co., 38 Va. App. 515, 566 S.E.2d 874 (2002). In Lam, a claimant sought more than three years of temporary disability compensation past-due under an existing award, as well as a penalty for untimely payment. Id. at 518, 566 S.E.2d at 875. Lam had notified Kawneer of his return to work for a different employer but then failed to respond to

Kawneer's requests for information concerning his date of employment and new earnings. Id. at 517, 566 S.E.2d at 875. Kawneer ceased paying benefits under the award as of the date of its receipt of Lam's letter but remained unable to obtain the specific information it needed to file a change-in-condition application to terminate the award. Id. at 518, 566 S.E.2d at 875. We upheld the commission's application of the doctrine of imposition to deny Lam's claim for benefits and a penalty based on the fact that he had suffered no wage loss and would be unjustly enriched if allowed to recover under the outstanding award. Id. at 518-20, 566 S.E.2d at 875-86.

Here, employer, not claimant, filed the application. Claimant had returned to work for the same employer, and employer's failure to request termination of the award on an earlier date did not result from any non-cooperation on the part of claimant. Finally, despite employer's request that it do so, the commission did not purport to exercise its equitable powers to relieve employer from the consequences of failing to act more promptly to terminate the temporary partial disability award based on claimant's return to his pre-injury employment.[6] Instead, without expressly citing Code § 65.2-520, the commission interpreted the "voluntary payments" language of that statute so broadly as to nullify the provisions of Code §§ 65.2-708 and 65.2-712 in contravention to our holding in Collins. As set out above, those code sections provide that, except in certain limited circumstances not applicable here, an employer seeking to terminate an outstanding award may affect that award only prospectively.[7]

---

[6] Thus, we do not consider whether the commission might properly have awarded employer a credit based on the doctrine of imposition or some other equitable power. Cf. Overhead Door Co. of Norfolk v. Lewis, 29 Va. App. 52, 61, 509 S.E.2d 535, 539 (1999) (noting, in context of an employer's request for credit for overpayment based on its subrogation rights, that "[w]e are unaware of any Virginia appellate cases applying the doctrine of imposition to permit the commission to exercise jurisdiction or to grant a form of relief never authorized by the Act under any circumstances, and we are unwilling to give the doctrine such an interpretation under the facts of this case").

[7] Employer acknowledges the general principle that an employer seeking to terminate an award based on a change in condition must pay compensation due pursuant to the award through

Permitting the commission to interpret Code § 65.2-520 to routinely grant credit for moneys an employer has paid pursuant to an award prior to requesting termination of the award would contravene clear legislative intent in Code §§ 65.2-708 and 65.2-712. See Brown, 259 Va. at 706, 529 S.E.2d at 101 ("[A] specific statute cannot be controlled or nullified by a statute of general application unless the legislature clearly intended such a result."). Although our holding that the commission lacked authority to grant the requested credit under Code § 65.2-520 will enrich claimant, the legislature's enactment of Code §§ 65.2-708 and 65.2-712 indicates its determination that this is an acceptable result in order to protect the integrity of the commission's awards and the individuals who often rely heavily on the compensation benefits paid pursuant to those awards. See Manchester Bd. & Paper Co. v. Parker, 201 Va. 328, 330-32, 111 S.E.2d 453, 455-56 (1959) (discussing purpose of statutory requirement that award modifications under Code § 65-95, predecessor to present Code § 65.2-708, may be prospective only).

III.

For these reasons, we hold the express provisions of Code §§ 65.2-708 and -712 governing the termination of an award based on a change in condition control and that the commission erred in construing Code § 65.2-520 to allow the requested credit. Thus, we vacate

---

the date of filing of the application. See, e.g., Manchester Bd. & Paper Co. v. Parker, 201 Va. 328, 330-32, 111 S.E.2d 453, 455-56 (1959) (discussing commission's promulgation of rule to give effect to terms of predecessor to Code § 65.2-708 prohibiting retroactive modification of awards). However, it points to Rule 1.4(C) of the Workers' Compensation Commission, which provides exceptions to this principle and permits termination of payments under an award as of the date of a claimant's return to work. It argues that Rule 1.4(C) supports its request for a credit.

Assuming without deciding that the exceptions contained in Rule 1.4(C) do not contravene the express language of Code § 65.2-708, we note the commission rejected a nearly identical argument made under the predecessor to present Rule 1.4(C). Williams v. Richfood, Inc., No. 146-94-52 (Va. Workers' Comp. Comm'n Sept. 24, 1992) (holding former Rule 13 "makes no provision for a credit" when employer is permitted by rule to terminate payments upon happening of certain condition, refusal of employment or medical attention, but instead pays compensation through date of filing of change-in-condition application).

the commission's order granting the requested credit and remand to the commission for further proceedings consistent with this opinion.

Vacated and remanded.