COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Alston and Chafin
Argued at Salem, Virginia


DAVID A. SHAVER

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1499-13-3               JUDGE TERESA M. CHAFIN
                                                  MAY 27, 2014

DEPARTMENT OF STATE POLICE/
 COMMONWEALTH OF VIRGINIA


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael A. Kernbach for appellant.

          Katherine DeCoster, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General; Wesley G. Russell, Jr., Deputy
          Attorney General; Peter R. Messitt, Senior Assistant Attorney
          General; Scott John Fitzgerald, Senior Assistant Attorney General,
          on brief), for appellee.


       David A. Shaver ("Shaver") appeals a decision of the Virginia Workers' Compensation

Commission ("the commission") denying him wage indemnity benefits for periods of temporary

total disability resulting from an occupational heart disease arising out of and in the course of his

employment with the Commonwealth of Virginia Department of State Police ("the employer").

On appeal, Shaver contends that the commission erred by holding that he was required to suffer a

loss of wages in order to receive a wage indemnity benefit and that his receipt of such a benefit

when he did not suffer a loss of wages would constitute a windfall that would unjustly enrich

him.  We hold that the commission did not err in denying Shaver indemnity benefits under the

circumstances of this case, and accordingly, we affirm the commission's decision.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal, this Court views the evidence in the light most favorable to the employer, the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  So viewed, the evidence establishes that Shaver retired from employment on September 1, 2010.  Prior to his retirement, Shaver had served as a Headquarters Lieutenant for Division IV of the employer.  Shaver voluntarily retired based on his years of service, and he did not work, seek employment, or have any plans to seek employment following his retirement.

On October 14, 2010, Shaver felt discomfort in his chest while driving his godson to school.  He was subsequently diagnosed with coronary artery disease.  Shaver's physicians stated that the occupational stress from his employment could have contributed to the development or acceleration of this heart disease.  Shaver was hospitalized due to this heart condition on the following dates:  October 14-15, 2010; November 3-7, 2010; November 17-18, 2010; May 20, 2011; November 2-3, 2011; and November 17-19, 2011.  Shaver was totally incapacitated during these periods of hospitalization.

On December 20, 2010, Shaver filed a claim for workers' compensation benefits based on his heart disease.  He requested both medical benefits and wage indemnity benefits to compensate him for the periods of total disability he suffered while hospitalized.  The employer stipulated that Shaver's coronary artery disease constituted a compensable occupational disease pursuant to Code § 65.2-402(B) and that he was entitled to medical benefits arising out of this diagnosis.[1]  The employer further stipulated that Shaver was totally disabled for the periods for

---

[1] Code § 65.2-402(B) provides, in pertinent part, that heart disease resulting in the total or partial disability of state police officers is presumed to be an occupational disease suffered in the

which he sought compensation and that he earned a pre-injury average weekly wage of $1,172.35. The employer argued, however, that Shaver was not entitled to wage indemnity benefits because he had not suffered an actual economic loss due to his heart condition, as he was voluntarily retired and not receiving wages during the time of his hospitalization and total temporary disability.

The deputy commissioner that heard Shaver's case awarded him medical benefits based on his heart disease, but denied him wage indemnity benefits for the periods of his hospitalization. The deputy commissioner found that Shaver had not sustained any economic loss attributable to his compensable occupational disease. The deputy commissioner held that Shaver had not lost any wages while he was temporarily disabled because he was retired and not employed or seeking employment during this period. Accordingly, the deputy commissioner denied Shaver's request for wage indemnity benefits.

Shaver requested a review of the deputy commissioner's decision by the full commission. Two commissioners affirmed the deputy commissioner's decision, and found that Shaver had failed to establish that his disability resulted in an actual loss of wages. These commissioners further held that awarding Shaver wage indemnity benefits where he had no wage loss would "unjustly enrich him and counter[] the spirit of the Virginia Workers' Compensation Act." One commissioner dissented, finding that Shaver was entitled to wage indemnity benefits pursuant to Code § 65.2-500 because he had earned income within fifty-two weeks preceding the communication of his disease. The dissenting commissioner found that this income demonstrated that Shaver had suffered an economic loss. The dissenting commissioner reasoned that Shaver could have worked and earned a similar wage during the periods in question in the

line of duty and is compensable unless this presumption is rebutted by a preponderance of competent evidence to the contrary. See Code § 65.2-402(B).

- 3 -

absence of his occupational disease. Shaver appealed the commission's decision denying wage loss compensation to this Court.

## II. ANALYSIS

This case presents a mixed question of law and fact on appeal. In reviewing the commission's decision denying indemnity benefits to Shaver, we must review the commission's application of the facts of the case to statutory law. The commission's factual findings will be upheld on appeal if they are supported by credible evidence. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). "Unlike questions of fact, however, we review questions of law *de novo*. We construe the Workers' Compensation Act liberally for the benefit of employees and give great weight to the commission's construction of the Act." Fairfax Cnty. Sch. Bd. v. Humphrey, 41 Va. App. 147, 155, 583 S.E.2d 65, 68-69 (2003) (citations omitted). When we review the commission's decision under these standards, we conclude that Shaver's arguments are without merit. As Shaver suffered no loss of wages during his period of total temporary disability, an award of wage indemnity benefits would unjustly enrich him. We conclude the commission did not err in concluding that Shaver was not entitled to wage indemnity benefits under these circumstances.

"The purpose of the Workers' Compensation Act is to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries." Arlington Cnty. Fire Dep't v. Stebbins, 21 Va. App. 570, 572, 466 S.E.2d 124, 125-26 (1996). Code § 65.2-500 provides wage indemnity benefits to injured workers during periods of temporary incapacity. That statute states, in pertinent part:

> when the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such total incapacity, a weekly compensation equal to 66 2/3 percent of his average weekly wages,

with a minimum not less than 25 percent and a maximum of not more than 100 percent of the average weekly wage of the Commonwealth as defined herein. In any event, income benefits shall not exceed the average weekly wage of the injured employee.

Code § 65.2-500(A). Code § 65.2-101 defines "average weekly wage" as:

[t]he earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, divided by 52 . . . . When the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided that results fair and just to both parties will be thereby obtained.[2]

As demonstrated by Code §§ 65.2-101 and 65.2-500, "[c]ompensation is ultimately dependent upon and determined on the loss of wages." Stebbins, 21 Va. App. at 573, 466 S.E.2d at 126. "'The reason for calculating the average weekly wage is to approximate the *economic loss* suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death.'" Id. (quoting Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987)). "When a worker does not suffer a loss of wages, receipt of compensation benefits would unjustly enrich the worker and result in manifest injustice." Lam v. Kawneer Co., 38 Va. App. 515, 518, 566 S.E.2d 874, 875 (2002). "The purpose of the Act 'is to compensate injured workers for lost wages, not to enrich them unjustly.'" Id. at 520, 566 S.E.2d at 876 (quoting Collins v. Dep't of Alcoholic Beverage Comm., 21 Va. App. 671, 678, 467 S.E.2d 279, 282, aff'd en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996)).

Both this Court and the Supreme Court have addressed factually similar cases in which retired employees have attempted to collect wage indemnity benefits for periods of total disability occurring after their retirement. In Stebbins, a retired firefighter sought wage

---

[2] Although Code § 65.2-101 provides alternate methods of calculating an employee's average weekly wage, these methods are inapplicable in this case.

indemnity benefits for a period of temporary total disability resulting from a heart condition. At the time his incapacity manifested itself, Stebbins was not employed or seeking employment and he had not earned wages from any employment since his voluntary retirement approximately two years earlier. Stebbins, 21 Va. App. at 572, 466 S.E.2d at 126. This Court held that Stebbins was not entitled to wage indemnity compensation. Id. at 573, 466 S.E.2d at 126. Stebbins had no average weekly wage because he had reported no earnings during the fifty-two-week period preceding his incapacity. Id. Due to his voluntary retirement, Stebbins also had not suffered any loss of wages or economic loss attributable to his period of disability. Id. at 574, 466 S.E.2d at 126. This Court held that

> [a]n award of compensation in these circumstances would result in a windfall to Stebbins and place him in a better economic position than he would have enjoyed absent an injury. This outcome ignores the purpose of the Act, moving beyond compensation for loss of work ability and becoming a reward for intangible damages.

Id.

The Supreme Court reached a similar conclusion in Newton v. Fairfax Cnty. Police Dep't, 259 Va. 801, 529 S.E.2d 794 (2000). In Newton, a retired police officer was diagnosed with occupational heart disease following his voluntary retirement. Id. at 803, 529 S.E.2d at 795. He subsequently died from a fatal heart attack. Id. Like the firefighter in Stebbins, Newton had not sought employment for the fifty-two-week period preceding his diagnosis and death. Id. Applying Stebbins, the Supreme Court noted that "Newton had earned no wages during the 52 weeks preceding the date of the communication of the diagnosis of his occupational disease, and, therefore, [he suffered] no economic loss." Id. at 805, 529 S.E.2d at 795. The Supreme Court held that Newton's statutory beneficiaries were not entitled to wage indemnity benefits under these circumstances. Id. at 805, 529 S.E.2d at 796.

Shaver argues that the present case is distinguishable from Newton and Stebbins because he earned wage income within the fifty-two-week period preceding his incapacity. Shaver argues that because he had an average weekly wage based on that income at the time of his disability, he is entitled to wage indemnity benefits compensating him for the loss of this wage. Shaver's contention that he earned wages within fifty-two weeks of his incapacity is correct. However, the receipt of those wages does not entitle him to wage indemnity benefits under the particular circumstances of this case. As previously stated, average weekly wages are calculated "'to approximate the *economic loss* suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death.'" Stebbins, 21 Va. App. at 573, 466 S.E.2d at 126 (quoting Bosworth, 4 Va. App. at 163, 355 S.E.2d at 340). When an employee does not suffer an economic loss due to a work-related injury, the calculation of an average weekly wage is irrelevant.

Although Shaver earned wages within fifty-two weeks of his disability, he did not suffer an actual loss of wages during his period of disability due to his voluntary retirement. At the time of Shaver's incapacity, he had been retired for approximately one and a half months. Shaver had voluntarily retired from his employment based on his years of service, and he did not plan to seek any other employment following his retirement.[3] Shaver was not receiving any wages during the period of his disability or planning to earn wages at a later date. Shaver did not suffer an economic loss in the form of lost wages resulting from his disability. The commission

_____

[3] We note that retirement alone does not necessarily deprive an individual of his or her earning capacity. In many cases, retired employees seek other employment following retirement. As noted in Stebbins, a retired employee may be entitled to wage indemnity compensation if that person is working in another position following retirement at the time of the occupational disability, or is actively seeking or planning to seek employment at that time. See Stebbins, 21 Va. App. at 574, 466 S.E.2d at 126. Such a scenario, however, is not before the Court under the facts of this case as Shaver candidly admitted that he had no intention to seek employment following his retirement.

correctly denied Shaver wage indemnity benefits. As noted in <u>Stebbins</u>, an award of wage indemnity compensation under these circumstances would result in a windfall to Shaver that would place him in a better economic position than he would have enjoyed absent an injury. <u>See</u> <u>Stebbins</u>, 21 Va. App. at 574, 466 S.E.2d at 126. This windfall would unjustly enrich Shaver as long as he received wage indemnity compensation, absent any actual loss of wages, regardless of whether he had earned wages earlier in the fifty-two-week period preceding his retirement.

We hold that the commission did not err in denying Shaver wage indemnity benefits during the period of his total temporary disability. Although an average weekly wage could be calculated for Shaver because he had earned wages during the fifty-two-week period preceding his disability, Shaver suffered no loss of wages resulting from his occupational disease. An award of wage indemnity benefits under these circumstances would unjustly enrich Shaver and counter the purpose of the Virginia Workers' Compensation Act. Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>